153 F.3d 30
 Fed. Sec. L. Rep. P 90,265
 Philip M. STAMM, Maureen R. Olivo, Plaintiffs,
Arthur Allan Stamm, Plaintiff-Appellant,
v.
BARCLAYS BANK OF NEW YORK, Barclays Bank PLC, Sedgwick
Lloyd's Underwriting Agents Ltd., Defendants,
Corporation of Lloyd's, also known as Society & Council of
Lloyd's, doing business as Lloyd's of London, Council of
Lloyd's, Committee of Lloyd's, Syndicates 0317, 0418 and
0421 at Lloyd's of London, Defendants-Appellees.
 
 Docket No. 97-9118.
 United States Court of Appeals,
Second Circuit.
 Argued April 2, 1998.
Decided Aug. 13, 1998.
 Richard A. De Palma, New York City, (Kevin J. Perra, Coudert Brothers, New York, NY, of counsel), for Plaintiff-Appellant.
 Debra M. Torres, New York City (Harvey L. Pitt, Stephanie J. Goldstein, Fried, Frank, Harris, Shriver & Jacobson, New York City, Lawrence W. Pollack, LeBoeuf, Lamb, Greene & MacRae, L.L.P., New York City, of counsel), for Defendants-Appellees Corporation of Lloyd's, Council of Lloyd's and Committee of Lloyd's.
 William A. Meehan, New York, NY. (Jeff Imeri, Mendes & Mount, LLP, New York City, of counsel), for Defendants-Appellees Syndicates 0317, 0418 and 0421 at Lloyd's of London.
 Before: McLAUGHLIN and PARKER, Circuit Judges, and EGINTON, District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiff-Appellant Arthur Allan Stamm ("Plaintiff") appeals from a judgment, entered August 8, 1997, in the United States District Court for the Southern District of New York (Shira A. Scheindlin, Judge ) dismissing with prejudice his First Amended Complaint on the basis of forum selection and choice of law provisions to which he had agreed.
 
 I. BACKGROUND
 
 2
 Plaintiff is an individual who acts as an underwriter, or "Name", of insurance policies traded in the insurance market operated by Defendants-Appellees Corporation of Lloyd's, Council of Lloyd's and Committee of Lloyd's (collectively, "Lloyd's"). Syndicates 0317, 0418 and 0421 ("Syndicates", and together with Lloyd's, "Defendants") are aggregations of Names, without separate legal status, through which the Plaintiff underwrote certain of these policies. For purposes of this appeal, a more detailed examination of the structure of the Lloyd's market is not necessary, but nonetheless may be found in Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1357-58 (2d Cir.1993). See also Stamm v. Barclays Bank, 960 F.Supp. 724, 725-27 (S.D.N.Y.1997) ("Stamm I ").
 
 
 3
 To act as a Name in the Lloyd's market, individuals must, among other things, become a member of the Society of Lloyd's. Prospective Names are required to execute, in London, a General Undertaking with the Society of Lloyd's in which they agree to comply with all regulations of the Council of Lloyd's, and further agree that:
 
 
 4
 The rights and obligations of the parties arising out of or relating to the Member's membership of, and/or underwriting of insurance business at Lloyd's and any other matter referred to in the Undertaking shall be governed and construed in accordance with the laws of England.
 
 
 5
 Each party hereto irrevocably agrees that the courts of England shall have exclusive jurisdiction to settle any dispute and/or controversy of whatsoever nature arising out of or relating to the Member's membership of, and/or underwriting of insurance business at Lloyd's, and that accordingly any suit, action, or proceeding ... arising out of or relating to such matters shall be brought in such courts, and to this end, each party hereto irrevocably agrees to submit to the jurisdiction of the courts of England and irrevocably waives any objection which it may have now, or hereafter to (a) any Proceedings being brought in such court ... and (b) any claim that any such Proceedings have been brought in an inconvenient forum and further irrevocably agrees that a judgment in any Proceedings brought in the English courts shall be conclusive and binding upon each party and may be enforced in the courts of any other jurisdiction.
 
 
 6
 (the "Choice Clauses").
 
 
 7
 Plaintiff initially filed this action on June 26, 1996, in the New York State Supreme Court for the County of New York, alleging various violations of the federal securities laws and state consumer protection acts, and asserting a common law fraud claim by and against Defendants and others. The gravamen of the complaint was that the Defendants had defrauded Plaintiff as part of a scheme to unburden Lloyd's and certain other Names of large asbestos and pollution-related liabilities.
 
 
 8
 In July 1996, the case was removed to the district court upon motion of Lloyd's. In the district court, Plaintiff voluntarily dismissed the federal securities law claims, and moved for remand to state court. The district court denied this motion. Defendants then moved to dismiss the complaint. The district court, in an opinion and order, dated March 26, 1997, granted this motion, holding that the Choice Clauses were enforceable. Stamm I, 960 F.Supp. at 729-33. The district court, however, also granted Plaintiff leave to replead his federal securities law claims on the basis that certain events had brought into question the continued vitality of this Court's holding in Roby, which was that the identical Choice Clauses were enforceable against other Names, and were not void as a violation of the anti-waiver provisions of the federal securities laws. Id. at 733-34.
 
 
 9
 Plaintiff subsequently filed his First Amended Complaint, which realleged violations of the federal securities laws by Defendants. Defendants again moved to dismiss. The district court, in an opinion and order, dated August 4, 1997, granted the motion to dismiss, holding that because of the Choice Clauses, Plaintiff's state claims were brought in an improper venue, and also holding that Plaintiff's federal securities claims were time-barred. Stamm v. Corporation of Lloyd's, No. 96 Civ. 5158 (SAS), 1997 WL 438773 (S.D.N.Y. Aug. 4, 1997) ("Stamm II "). The district court did not directly reach the question of whether Roby remained valid precedent. This appeal followed.
 
 II. DISCUSSION
 
 10
 This appeal is not the first time that this Court has been faced with litigation commenced by Names alleging fraud against Lloyd's. See, e.g., Roby, 996 F.2d 1353. Six of our sister circuits have also faced similar litigation. See, e.g., Richards v. Lloyd's of London, 135 F.3d 1289, 1294 (9th Cir.1998) (en banc ) (collecting cases where other circuit courts have enforced the Choice Clauses). In seeking to overcome the effect of the Choice Clauses in each of these numerous cases, Names have unfailingly asserted, as Plaintiff does here, one or more of the same three arguments as to why the Choice Clauses should be found unenforceable.
 
 
 11
 First, they argue that although they do not allege that their assent to the Choice Clauses was itself fraudulently induced, they allege that Choice Clauses constitute part of a larger scheme to defraud the Names, and that the Choice Clauses are therefore not enforceable. Second, they argue that the Choice Clauses, in light of the alleged larger fraudulent scheme, are unconscionable, and thus should not be enforced. Third, they argue that the Choice Clauses, which, as noted above, require litigation in England to be governed by English law, constitute a waiver of the protections of the United States securities laws, which pursuant to section 14 of the Securities Act of 1933, 15 U.S.C. § 77n, and section 29(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(a), are void and unenforceable.
 
 
 12
 With regard to Plaintiff's first two arguments, we find them unavailing for substantially the same reasons as those laid out by the district court in its thoughtful and well-reasoned opinion. See Stamm I, 960 F.Supp. at 729-33; see also Tufts v. Corporation of Lloyd's, 981 F.Supp. 808, 812-14 (S.D.N.Y.1996), aff'd, 128 F.3d 793 (2d Cir.1997) (per curiam).
 
 
 13
 As to Plaintiff's third argument, that the Choice Clauses amount to an invalid waiver of the protections of the securities laws, we write to reaffirm the vitality of Roby, and we therefore do not reach the statute of limitations issue relied upon by the district court. The district court seemingly relied on the statute of limitations issue because it was unsure as to whether Roby remained good law, in light of an apparent change of position of the Securities and Exchange Commission ("SEC") on the Choice Clauses, as evidenced by an amicus curiae brief filed by the SEC in the Ninth Circuit in Richards, and because Roby had been subject to certain academic criticism.[1] See Stamm II, 1997 WL 438773 at * 2-* 3. The district court noted that it found this criticism to be "highly persuasive," and given that the SEC now urges that the Choice Clauses should be found to be unenforceable waivers of the protections of the securities laws, and that in Roby we noted the position of the SEC, "[a]rguably, a district court might find that Roby no longer requires the enforcement" of the Choice Clauses with regard to securities law claims. Id. at * 3.
 
 
 14
 It is true that in Roby we expressed our concern that the Choice Clauses may potentially serve as a prospective waiver of the protections of the securities laws, and that in overcoming this concern, we noted that the SEC "consistently has exempted Lloyd's from the registration requirements of the securities laws." Roby, 996 F.2d at 1365. However, our holding in Roby was not premised solely upon the positions that the SEC has taken regarding Lloyd's and the Choice Clauses; rather, it primarily rested upon the adequacy of English law to deter fraud and misrepresentation, to encourage full disclosure, and to provide plaintiffs remedies in the event of a fraud. Id. at 1364-65 ("We believe that if the Roby Names were able to show that available remedies in England are insufficient ... we would not hesitate to condemn the [Choice Clauses] as against public policy."). Accordingly, regardless of the position the SEC has now taken with regard to the Choice Clauses, such a change in position does not undermine our holding, as English law remains adequate to discourage fraud and misrepresentation, and to provide Plaintiff with a remedy should a fraud be proven.
 
 
 15
 We therefore reaffirm our holding in Roby, namely, that the Choice Clauses are enforceable and do not amount to a waiver of the protections of the securities laws. This holding is consistent with the position of six of our sister circuits. See Richards, 135 F.3d at 1294-95; Haynsworth v. The Corporation, 121 F.3d 956, 969 (5th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1513, 140 L.Ed.2d 666 (1998); Allen v. Lloyd's of London, 94 F.3d 923, 929-30 (4th Cir.1996); Shell v. R.W. Sturge, Ltd., 55 F.3d 1227, 1230-31 (6th Cir.1995); Bonny v. Society of Lloyd's, 3 F.3d 156, 160-62 (7th Cir.1993); Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 958 (10th Cir.1992). Therefore, the district court correctly dismissed Plaintiff's First Amended Complaint.
 
 III. CONCLUSION
 
 16
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Warren W. Eginton, Senior Judge of the United States District Court for the District of Connecticut, sitting by designation
 
 
 [1]
 The district court also noted the Ninth Circuit's criticism of Roby in Richards v. Lloyd's of London, 107 F.3d 1422, 1428 (9th Cir.1997). This opinion was, however, reversed, Richards, 135 F.3d 1289 (9th Cir.1998) (en banc ), and the Ninth Circuit is now in agreement with Roby