### E.R. SQUIBB & SONS, INC., Plaintiff–Appellee,

#### v.

### ACCIDENT & CASUALTY INSURANCE CO.; American Home Assurance Co.; Allan Peter Dennis Haycock; Accident & Casualty Insurance Co. of Winterthur; Alba General Insurance Co., Ltd.; Anglo–French Insurance Co., Ltd.; Anglo Saxon Insurance Co., Ltd.; Argonaut–Northwest Insurance Co.; Aviation & General Insurance Co.; Bishopsgate Insurance Co., Ltd.; British Aviation Insurance Co., Ltd.; City General Insurance Co.; Commercial Union Insurance Co.; Cornhill Insurance Co., Ltd.; Delta Lloyd Non–Life Insurance Co., Ltd.; Dominion Insurance Co., Ltd.; Drake Insurance Co., Ltd.; Eagle Star Insurance Co., Ltd.; Excess Insurance Co., Ltd.; Fidelidade Insurance Co. of Lisbon; Helvetia Accident Swiss Insurance Co.; Hull Underwriters Association Ltd.; Lombard Insurance Co., Ltd.; London & Edinburgh Insurance Co., Ltd.; London & Edinburgh General Insurance Co., Ltd.; Minister Insurance Co., Ltd.; Motor Union Insurance Co., Ltd.; National Casualty Co.; National Casualty Co. of America Ltd.; New India Assurance Co., Ltd.; New London Reinsurance Co., Ltd.; Northbrook Excess & Surplus Insurance Co.; River Thames Insurance Co., Ltd.; Royal Scot Insurance; St. Katherine Insurance Co., Ltd.; Scottish Lion Insurance Co., Ltd.; Southern Insurance Co., Ltd.; Sphere Insurance Co., Ltd.; Stronghold Insurance Co., Ltd.; Swiss National Insurance Co.; Swiss Union General Insurance Co., Ltd.; The

Threadneedle Insurance Co., Ltd.; Trent Insurance Co., Ltd.; Turegum Insurance Co.; Unionamerica Insurance Co., Ltd.; Vanguard Insurance Co., Ltd.; "Winterthur" Swiss Insurance Co.; World Auxiliary Insurance Corp, Ltd.; World Marine Insurance Co.; Yasuda Fire & Marine Insurance Co., Ltd.; Certain Underwriters at Lloyd's of London; Continental Casualty Co., Defendants–Appellants,

Insurance Company of the State of Pennsylvania, Appellant,

American Motorists Insurance Co.; Lloyd's & Companies; Aetna Casualty & Surety Co.; Andrew Weir Insurance Co., Ltd.; Bermuda Fire & Marine Insurance Co.; British National Insurance Co.; California Union Insurance Co.; Centennial Insurance Co.; Columbia Casualty; Employers Insurance of Wausau; English & American Insurance Co., Ltd.; Fireman's Fund Insurance Co.; Great American Insurance Co.; Highlands Insurance Co.; Home Insurance Co.; Insurance Company of North America; Liberty Mutual Insurance Co.; London & Overseas Insurance Co., Ltd.; Lumbermans Mutual Casualty Co.; Midland Insurance Co.; Mission Insurance Co.; Mutual Reinsurance Co., Ltd.; National American Insurance Co. of New York; Orion Insurance Co., Ltd.; St. Paul Fire & Marine Insurance Co.; Southern American Insurance Co.; Sovereign Marine & General Insurance Co., Ltd.; Transit Casualty Co.; United Standard Insurance Co., Ltd.; Walbrook Insurance Co., Ltd.; The Hanover Insurance Co.; Utica Mutual Insurance Co., Defendants.

Nos. 97–9468(L); 97–9470(CON); 97–9472(CON); 97–9474(CON); 97–9476(CON); 97–9484(XAP).

United States Court of Appeals, Second Circuit.

Argued Aug. 10, 1998.

Decided Nov. 25, 1998.

George Marshall Moriarty (John T. Montgomery, James W. Matthews, Rachel E. Hershfang, of counsel), Ropes & Gray, Boston, MA, for Defendants–Appellants.

Louis Solomon, Solomon, Zauderer, Ellenhorn, Frischer & Sharp, New York City (Hal S. Shaftel, Caroline S. Press, and Laleh Ispahani, Solomon, Zauderer, Ellenhorn, Frischer & Sharp; Robert S. Rifkind and David J. Stone, Cravath, Swain & Moore, New York City, of counsel), for Plaintiff–Appellee.

Charles A. Booth, Ford Marrin Esposito Witmeyer & Gleser, New York City, for Defendant–Appellant Continental Casualty Co.

Before: JACOBS, CALABRESI, and STRAUB, Circuit Judges.

Judge JACOBS concurs in the opinion of the Court, and also files a separate opinion.

CALABRESI, Circuit Judge:

Appellants, a group of more than fifty insurers, appeal from a declaratory judgment of the United States District Court for the Southern District of New York (John S. Mar-

tin, Jr., *Judge*) following a jury trial on the insurance policies provided by Appellants to Appellee E.R. Squibb & Sons, Inc. ("Squibb"). Although this case has been litigated in federal court for sixteen years, the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1332 (1994) has not been established. This is due to the presence in the suit of "Certain Underwriters at Lloyd's of London" ("Lloyd's").[1] Accordingly, we vacate the judgment and remand to the district court for further proceedings on the jurisdictional issue.

## BACKGROUND

In 1982, Squibb brought a declaratory action against its domestic primary and excess insurers seeking indemnification for product liability claims arising out of the use of the drug diethylstilbestrol ("DES"). In 1984, Squibb filed a new consolidated complaint against its insurers that included a host of new domestic and foreign defendants.[2] Among those named in the consolidated complaint was defendant Allen Peter Dennis Haycock ("Haycock"), a British subject, who was named "as a representative underwriter representing certain underwriters at Lloyd's [ of] London, being all underwriters who subscribed the policies of insurance issued to the plaintiff and upon which the plaintiff brings the present action." The parties subsequently stipulated that Haycock was "appearing in this action in his individual capacity, and for administrative convenience, as a

representative of all Lloyd's Underwriters." Squibb, which is a citizen of Delaware and New Jersey, invoked diversity jurisdiction and New York law to support its claims. For the next thirteen years, the case proceeded with discovery and then culminated in a jury trial in which Squibb prevailed.[3]

While the appeal of Squibb's judgment was pending, this court decided *Advani Enterprises, Inc. v. Underwriters at Lloyds*, 140 F.3d 157 (2d Cir.1998). *Advani* raised, but did not decide, the difficult questions involved in determining how the Lloyd's underwriters should be analyzed for purposes of the requirements of diversity jurisdiction.[4] *See id.* at 160–61. In light of the discussion in *Advani*, this court raised *sua sponte* the issue of whether, due to Haycock's status as a defendant representing "Certain Underwriters at Lloyd's of London," diversity jurisdiction existed in the district court. We requested additional briefing on that question.[5]

In the course of that briefing, counsel discovered that Haycock had recently died. Squibb and Lloyd's now move to add Stephen Merrett, another Lloyd's underwriter and British subject, perhaps in replacement of Haycock,[6] and to find that diversity jurisdiction exists in this action.

Before addressing the complex jurisdictional issues raised by this case, we think it helpful to summarize our understanding of the unique structure that is Lloyd's of Lon-

1. "Certain Underwriters at Lloyd's of London" is the term used by the parties to refer to the individual underwriters of Squibb's insurance policy. We discuss the structure of a policy subscribed to by "Certain Underwriters at Lloyd's of London" in greater detail *infra*. Our occasional use of the term "Lloyd's" to refer to these individual underwriters is in no way meant to imply that we believe that such individual underwriters constitute an entity for jurisdictional purposes (see Part III of the opinion).

2. The consolidated complaint is the operative pleading in the case.

3. We express no view on the merits of this judgment.

4. *Advani* did not ultimately reach the diversity question because admiralty jurisdiction, which existed independently, sufficed to support the suit. *See Advani*, 140 F.3d at 161.

5. In doing so, we referred the parties to *K. Bell & Associates, Inc. v. Lloyd's Underwriters*, No. 92 Civ. 5249, 1998 WL 274346 (S.D.N.Y. May 26, 1998) (Peck, M.J.), which discussed some of the jurisdictional problems created by a diversity suit against the Lloyd's underwriters.

6. Squibb and Lloyd's originally brought a substitution motion under Rule 43(a) of the Federal Rules of Appellate Procedure, which provides for the replacement of a party who dies while an appeal is pending. Subsequently, Squibb made a motion simply to add Merrett as a new party under Rule 21 of Federal Rules of Civil Procedure, which provides, in pertinent part: "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." For reasons that we discuss *infra*, from a jurisdictional point of view, we see no advantage to a Rule 43(a) motion as against two Rule 21 motions, one to add Merrett as a party and another to drop Haycock from the suit.

don. Lloyd's began as a coffee house but has developed into one of the world's leading markets for insurance. *See* Godfrey Hodgson, *Lloyd's of London* 49–75 (1984). This market, however, operates in accordance with age-old customs that are, to say the least, unusual in American business law.

The anonymous underwriters of Lloyd's insurance, who are commonly referred to as "Names," invest in a percentage of the policy risk. While the rewards of a Lloyd's investment can be great, each Lloyd's Name is exposed to unlimited liability, but only for his or her share of the loss on a policy that the Name has underwritten. In other words, the liability of each Name on any given policy, while unlimited, is several and not joint. Insurance from Lloyd's is typically subscribed to by hundreds of Names belonging to different subgroups known as "syndicates." Although syndicates within the Lloyd's market negotiate with each other to spread insurance risk, the syndicates themselves have been said to have no independent legal identity. *See The Society of Lloyd's v. Clementson,* [1996] 5 Re. L.R. 215.

The syndicate Names do not manage their own investments. Instead, each syndicate appoints one of its Names (who is usually an insurance broker) to represent the collective interests of the Names in that syndicate. This person is known as the "lead underwriter." The typical Lloyd's policy contains a clause providing that "any [Name] can appear as representative of all [Names]." In practice, however, since many Names from various syndicates are usually involved in any particular policy, the lead underwriter from *one* of the underwriting syndicates is designated as the representative of all the Names in any of the relevant syndicates, and he is the only Name disclosed on a policy.

When litigation over a Lloyd's policy occurs, only one Name (the lead underwriter disclosed on the policy) is ordinarily sued. Nevertheless, all the Names subscribing to that policy are liable for their several shares of any adverse judgment against the Lloyd's underwriters. This is because the standard Lloyd's policy running between the insured and each Name states "that in any suit insti-

tuted against any one of [the Names] upon this contract, [all the Names] will abide by the final decision of such Court or of any Appellate Court in the event of an appeal." Each Name is, therefore, bound by contract with the insured to adhere to the decision reached in the suit.[7]

## DISCUSSION

### I

■ Since "subject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power," *Curley v. Brignoli, Curley & Roberts Assocs.,* 915 F.2d 81, 83 (2d Cir.1990), we must consider whether there is diversity jurisdiction in this action, even though the parties have assumed for the past sixteen years that they had a right to be in federal court, and desperately—vehemently even—want the court to find that jurisdiction exists. We understand and fully sympathize with that desire. Sixteen years is a long time. And there is no suggestion that the parties engaged in any collusion or misbehavior to create federal jurisdiction when this suit was originally brought. It would, therefore, be most unfortunate if, in the end, it were necessary for us to hold that no federal jurisdiction existed and that the parties had to start all over again in state court.

■ Having said that, we must nevertheless recognize that jurisdiction is not a game. As the Supreme Court has made abundantly clear, it is one of the fundamental tenets of our Constitution that only some cases may be brought in federal court. *See Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the [diversity] statute has defined."). And no amount of agreement by the parties can create jurisdiction where none exists. *See Philippines v. Marcos,* 806 F.2d 344, 352 (2d Cir.1986).

Nor should we, to accommodate the particular and unfortunate situation before us, make law on jurisdiction that would be undesirable in the mass of cases. We must,

---

**7.** The contract, however, renders a Name liable only for policies that he or she has underwritten, and not for policies underwritten solely by other Names within the Lloyd's market.

moreover, carefully follow the guidelines on jurisdiction that the Supreme Court has set forth. Nobody's interest would be served if we by stretching the law found jurisdiction to exist, only to have that position ultimately rejected by the High Court. If it would be dismal for all concerned to have to go back to square one after sixteen years, it would be even more unfortunate were we to create a situation that, while seemingly determining the matter, would instead result in the parties being forced to return to the beginning after eighteen or twenty years.

■ With that as a prologue, we turn to the jurisdictional problems this case presents. It is axiomatic that, for diversity jurisdiction to be available, all of the adverse parties in a suit must be completely diverse with regard to citizenship. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). In the case before us, we have been assured that such complete diversity of citizenship is clearly present as to every party except the Lloyd's underwriters. Haycock—who, though dead, still remains in this case—was sued by Squibb both as an individual Name and as the lead underwriter representing all of the Lloyd's Names on Squibb's policy.[8] The first question we must therefore decide is whether only the Lloyd's representative lead underwriter needs to meet the diversity requirement or whether each and every Name represented (i.e. each Name subscribing to the Lloyd's policy at issue in the case) must be of diverse citizenship.

If the lead underwriter is the proper focal point, then the parties assert that there is no jurisdictional problem in the case. They al-

lege—and there is no evidence in the record to the contrary—that Haycock is a foreign subject who could be sued without destroying complete diversity. *See* 28 U.S.C. § 1332(a)(3) (1994) (providing that diversity jurisdiction exists in civil suits between "citizens of different States and in which citizens or subjects of a foreign state are additional parties"). On the other hand, if the citizenship of each Name must be considered, then a remand would clearly be required in this suit as currently constituted, since the record does not disclose the identity, let alone the citizenship, of the Names involved in the case. And without knowledge of that citizenship, it would be impossible to say that complete diversity exists.

■ The test for determining the existence of diversity jurisdiction is generally "the citizenship of real parties to the controversy." *See Navarro Savings Ass'n v. Lee,* 446 U.S. 458, 461, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). Since the Lloyd's market presents a unique structure for jurisdictional analysis, it is not surprising that the two circuits that have addressed issues analogous to the one that we now face have reached opposite conclusions.[9] *Compare Certain Interested Underwriters at Lloyd's, London v. Layne,* 26 F.3d 39 (6th Cir.1994) (holding that a lead underwriter is the only real party of interest to the controversy and hence is the only Lloyd's Name that must be completely diverse),[10] *with Indiana Gas Co. v. Home Ins. Co.,* 141 F.3d 314 (7th Cir.) (holding that each and every Name must meet the complete diversity rule), *cert. denied* —— U.S. ——, 119 S.Ct. 339, 142 L.Ed.2d 280 (1998).[11]

8. We defer until later all discussion of the possible effect of adding Merrett for Haycock, of doing so in an individual capacity only, and of perhaps, then, dropping Haycock from the suit either in his representative capacity or altogether.

9. Though the underlying issues are analogous, we believe that differences exist because of which our case can be distinguished from these prior cases. *See infra.*

10. *Layne,* however, relied in part on a reading of Tennessee law, *see Layne,* 26 F.3d at 43, that does not apply to this diversity action brought under New York law. *See Humm v. Lombard World Trade, Inc.,* 916 F.Supp. 291, 295–97 (S.D.N.Y.1996).

11. *Indiana Gas* applied a different analysis to the Lloyd's underwriters, based on the Supreme Court's decision in *Carden v. Arkoma Associates.,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). *Carden* held that the citizenship of all partners in a limited partnership had to be taken into account in a suit brought by or against a limited partnership. *See Indiana Gas,* 141 F.3d at 317. For the reasons set forth in Part III of the opinion, we do not think that *Carden* applies to the individual Lloyd's underwriters in the instant case. As we shall see soon enough, however, on the pleadings currently before us the jurisdictional result is the same under either the "real party to the controversy" test of *Navarro* or the rule of *Carden.*

As the suit is currently constituted, we believe that the Seventh Circuit has the better of this argument. We therefore reject the notion that Squibb's suit, in its present posture, allows our jurisdictional inquiry to focus solely on the citizenship of a Lloyd's representative lead underwriter. The general rule undoubtedly is "that federal courts must look to the individuals being represented rather than their collective representative to determine whether diversity of citizenship exists." *See Northern Trust Co. v. Bunge Corp.*, 899 F.2d 591, 594 (7th Cir.1990) (finding that a representative of a group of shareholders took on the citizenship, for jurisdictional purposes, of each shareholder represented). The question before us, therefore, is: can the Lloyd's underwriters fit into one of the exceptions to that rule?

## II

There are three principal exceptions. The first involves corporations, whose citizenship alone matters and the status of whose individual shareholders can therefore be ignored. *See, e.g., Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 861 (2d Cir.1995). That exception is not relevant to this case. The second possibility concerns trusts, as to which the Supreme Court has deemed the citizenship of the trustees to be determinative. *See Navarro*, 446 U.S. at 465–66, 100 S.Ct. 1779. The contention—strongly urged by the parties—that the rule of *Navarro* should apply in the instant case because the Lloyd's market is a trust and the lead underwriter is a trustee is not persuasive.

As the Seventh Circuit stated in *Indiana Gas:*

Trustees *own* the corpus; ownership is what distinguishes a trustee from an agent. [Lead] underwriters commit the wealth of the syndicates' names to fulfilment of the policy, which makes the insurance valuable to the customer, but the [lead] underwriters do not own this wealth or exercise over it any dominion other than the power to underwrite risks.

*Indiana Gas*, 141 . F.3d at 318. We agree with this analysis and conclude that a Lloyd's lead underwriter cannot be deemed a trustee for jurisdictional purposes.

The final exception involves class actions, where the Court has held that only the citizenship of the class representatives is relevant for the establishment of diversity jurisdiction. *See Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) (citing *Supreme Tribe of Ben–Hur v. Cauble*, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921)) And—despite the fact that this case was not originally brought as a class action—the parties understandably seek to invoke this exception. They ask the court to recharacterize Squibb's complaint as stating a Rule 23.2 class action [12] against the Lloyd's underwriters pursuant to our power to correct defective allegations of jurisdiction, *see* 28 U.S.C. § 1653 (1994).[13] The parties contend that if we read Squibb's complaint as a Rule 23.2 class action, only Haycock's citizenship will be relevant and diversity jurisdiction can be found. *See Snyder*, 394 U.S. at 340, 89 S.Ct. 1053.

They assert, moreover, that we have done just this in a prior case. In *Curley*, they say, we exercised our discretion and recharacterized a derivative suit by various limited partners against their partnership as a Rule 23.2 class action in order to salvage diversity jurisdiction. *See Curley*, 915 F.2d at 82, 87–88. The plaintiffs in *Curley* were the victims of a breach of fiduciary trust by the general partner. *See id.* at 83. This breach had included a significant misappropriation of the partnership's assets. *See id.* While judgment for the plaintiffs was being appealed, the Supreme Court decided *Carden v. Arkoma Associates.*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). *See Curley*, 915 F.2d at 82. *Carden* held that each and every partner in a limited partnership had to be diverse in a suit by or against a partnership. *See Carden*, 494 U.S. at 195–96, 110 S.Ct. 1015. The defrauding general partner in *Curley* hastily pointed out that complete diversity did not

---

**12.** Rule 23.2 of the Federal Rules of Civil Procedure permits unincorporated associations to sue and be sued as a class.

**13.** Our analysis of the complete diversity issue in a Rule 23.2 class certification applies equally to all other Rule 23 class actions that Squibb might be viewed as having brought against the Lloyd's underwriters.

exist between the plaintiffs and each and every limited partner. *See id.* at 83–84. We concluded that, since "[d]efendants [were] not prejudiced by the proposed amendment," the plaintiffs' action could be recast as a Rule 23.2 class action to sustain diversity jurisdiction. *See id.* at 88.

The parties' request in this case presents us with a somewhat different situation. First, unlike *Curley,* this suit was before the district court after *Carden*was decided, and the parties, therefore, had an opportunity to amend their complaint so as to state a class action claim if they wished to do so. Second, some of the equitable considerations present in *Curley*(where we were trying to prevent the perpetuation of a fraud against the limited partners) are absent in the case before us.

More important, when faced with a similar question of whether a suit against the Lloyd's underwriters could be reconstrued as a Rule 23.2 class action, the Seventh Circuit, in *Indiana Gas,* rejected the idea on its merits. *See Indiana Gas,* 141 F.3d at 321 (petition for rehearing). Because it considered the Lloyd's syndicates to be the functional equivalent of limited partnerships, the Seventh Circuit concluded that converting a suit against the Lloyd's underwriters into a class action would undermine the substantive distinction, for purposes of jurisdiction, between Rule 23 classes and limited partnerships.[14] *See id.*

Admittedly, this distinction is not pellucid. And, at a *functional* level, the decision in *Carden,* 494 U.S. at 195–96, 110 S.Ct. 1015, requiring courts to look at the citizenship of all the members of a limited partnership in order to establish diversity jurisdiction cannot be easily reconciled with *Snyder,* 394 U.S. at 340, 89 S.Ct. 1053, under which a Rule 23.2 class representative is the sole focus of the jurisdictional inquiry. Thus, as Justice O'Connor (arguing that *Carden* was an exercise in formalism) noted in her dissent: "[D]espite the Court's holding . . ., unincorporated associations may gain access to the federal courts by bringing or defending suit as a Rule 23 class action, in which case the citizenship of the members of the class

would not be considered." *See Carden,* 494 U.S. at 207, 110 S.Ct. 1015 (O'Connor, J., dissenting).

Justice O'Connor did not, of course, suggest that recharacterizing such cases *retroactively* was appropriate, and her dissent must be taken to speak only to cases initially brought as class actions. Nevertheless, her assertion was left unanswered by the *Carden* majority, and so the apparent tension between class actions and limited partnerships in the Supreme Court's diversity jurisprudence remains unresolved.

The Seventh Circuit addressed this tension in *Indiana Gas* and rejected Justice O'Connor's suggestion. *Indiana Gas* held that the plaintiffs could not evade the rule of *Carden* by reclassifying the suits against the Lloyd's syndicates as class actions since "a rule of procedure [cannot] expand the subject-matter jurisdiction of the federal courts." *See Indiana Gas,* 141 F.3d at 321 (petition for rehearing); *see also* Fed.R.Civ.P. Rule 82 ("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venues of actions therein.").

There are potentially significant differences between *Indiana Gas* and the instant case. The suit in *Indiana Gas,* unlike the action in this case, was brought against a Lloyd's lead underwriter *only* in his representative capacity. *See Indiana Gas,* 141 F.3d at 321 (petition for rehearing). And the Seventh Circuit considered the analogy to class actions inapt because the court asserted that the proposed Lloyd's Rule 23.2 representative—the lead underwriter—did not have a personal stake in the outcome as an ordinary class representative does and must. *See id.* By contrast, Squibb has made a direct claim against Haycock, whom it has sued both as an individual Name and as a representative of all the Names. Actually, given the fact that under the Lloyd's contracts all Names on a policy agree to liability whenever the Name sued has been adjudged liable, we believe that even if Haycock had

---

14. The Seventh Circuit also rejected a class action recharacterization for procedural reasons since the request was raised for the first time on a petition for rehearing. *See Indiana Gas,* 141 F.3d at 321 (petition for rehearing). Nevertheless, the court expressly declined to rest its result on this procedural ground. *See id.*

been sued only as a representative he would—as a Name—have possessed the individual stake necessary to act as an appropriate Rule 23.2 class representative.

Since the Seventh Circuit based its decision in *Indiana Gas* on a contrary assumption—that the lead underwriter had no such individual stake—its decision not to recharacterize need not be read as denying the possibility of recharacterization where such a stake exists. We cannot deny, however, that the affect, if not the technical holding, of *Indiana Gas* suggests that the Seventh Circuit looks unfavorably on recharacterizations.[15] Under the circumstances, we should be hesitant to consider whether this case is subject to recharacterization unless the district court rules that it is otherwise without jurisdiction, and also that this case both can and should be recharacterized as a class action.

There is, moreover, an additional reason why a simple recharacterization of this case as a class action is not at this time advisable. Recasting the case as a class action with Haycock as the class representative would not, without much more, solve the jurisdictional problems we face. It would only force us to confront difficult questions involving the dollar amount in controversy in this suit. The requirement that a certain amount be at stake is an unwaivable jurisdictional one, *see* 28 U.S.C. § 1332(a).[16] And whether in the instant case the jurisdictional amount is met depends on how we interpret a series of complex and ambiguous rules.

Thus, even if it were established that Haycock as class representative met the jurisdictional amount as to his own individual liability (which is itself anything but obvious),[17] that would not end the matter. For—except

as possibly modified by 28 U.S.C. § 1367 and 28 U.S.C. § 1332(a)(3), which we discuss below—each and every Name would still have to satisfy the jurisdictional amount.[18]

■ It is well established that for diversity actions "the rule applicable to several plaintiffs having separate claims, that each must represent an amount sufficient to give the court jurisdiction, is equally applicable to *several* liabilities of different defendants to the same plaintiff." *See Walter v. Northeastern R.R. Co.*, 147 U.S. 370, 374, 13 S.Ct. 348, 37 L.Ed. 206 (1893) (emphasis added). And the fact that the several liability of the Names derives from a single insurance policy does not alter the jurisdictional analysis. *See Motorists Mut. Ins. Co. v. Simpson*, 404 F.2d 511, 513 (7th Cir.1968) ("When two or more claimants are joined as defendants in one declaratory judgment suit, the pecuniary test of jurisdiction depends on whether the potential liability of the insurer is joint or several.... That the foundation of both potential claims is based on provisions in the same document is immaterial.").

■ Nor is a plaintiff permitted to aggregate its claims against individual defendants to meet the jurisdictional requirement. Aggregation to achieve diversity jurisdiction is barred when the liability of the defendants is several and not joint. *See Walter*, 147 U.S. at 373, 13 S.Ct. 348; *see also Thomson v. Gaskill*, 315 U.S. 442, 447, 62 S.Ct. 673, 86 L.Ed. 951 (1942) ("Aggregation of plaintiffs' claims cannot be made merely because the claims are derived from a single instrument...."). As a result, each and every severally liable defendant must, in the normal course of things, meet the amount in controversy.

**15.** Our decision in *Curley*, instead, reflects an attitude towards recharacterization that differs from the Seventh Circuit, which, as far as we can tell, has never recharacterized a suit retroactively.

**16.** When Squibb filed its consolidated complaint in 1984, the amount in controversy requirement was $10,000. *See* 28 U.S.C. § 1332(a) (1982), *amended by* Pub.L. No. 100–702, Tit. 11 § 201(a), 102 Stat. 4646 (1988) (increasing the requisite amount to $50,000), *and* Pub.L. No. 104–317, Tit. 11, § 205(a), 110 Stat. 3850 (1996) (raising the amount to $75,000).

**17.** The extent of Haycock's individual liability is not clear from the record. *But cf. infra* note 18 (discussing Squibb's claim that all the Names meet the amount in controversy).

**18.** In a supplemental brief submitted following oral argument, Squibb argues that each Name does, in fact, meet the necessary amount in controversy. Since we believe that a remand is required in any event, we think it best that the factual issues attaching to this assertion first be addressed by the district court.

It follows that viewing Squibb's suit as a Rule 23.2 class action would not seem readily to solve the problem of jurisdictional amount. But the parties argue that it does. They contend, for example, that § 1332(a)(3) exempts foreign nationals from the jurisdictional minimum. That is a question that no court has ever addressed, and reaching the conclusion urged by the parties is not without significant problems. *See generally* Note, *Federal Jurisdiction over Suits Between Diverse United States Citizens with Aliens Joined to Both Sides of the Controversy Under 28 U.S.C. § 1332(a)(3),* 38 Rutgers L.Rev. 71, 87–97 (1985) (describing the legislative history of § 1332(a)(3) as focused exclusively on the citizenship diversity question and not on jurisdictional amount).

Moreover, accepting the parties' contention would still not mean that the jurisdictional problems we face would disappear. For even if § 1332(a)(3) means what the parties assert that it does, the provision exempts only foreign nationals. Thus, while Haycock (the purported original class representative and a British subject) would, on such a reading, undoubtedly satisfy the jurisdictional requirement, that would not mean that all the individual Names met the amount. Since we do not know the identity, let alone the nationality, of these Names, we would still be left without the requisite certainty that the jurisdictional minimum was satisfied by those to whom it manifestly applies—U.S. nationals. It follows that, unless *class action* members who are severally liable do not need to meet the jurisdictional amount individually for some other reason, then reading § 1332(a)(3) as the parties ask us to do would not suffice to establish jurisdiction.

We must therefore turn to the parties' alternative arguments with respect to the jurisdictional amount. In *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), the Supreme Court expressly barred aggregation of several claims in class actions and held that each defendant, even if seen as part of a class, would have to meet the jurisdictional amount requirement individually. But the parties contend (1) that § 1367 overturns *Zahn* and now permits aggregation in all class action suits;[19] and (2) that Squibb's claims against the Names can be aggregated in a Rule 23.2 action even if *Zahn* still governs and aggregation is barred in other types of class actions.

Two circuits have indeed held that, after the enactment of § 1367, *Zahn* is no longer good law. *See Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928, 931 (7th Cir.1996); *Free v. Abbott Lab. (In re Abbott Lab.),* 51 F.3d 524, 529 (5th Cir.1995). This conclusion was based on the fact that § 1367 does not exempt Rule 23 actions from its reach, while specific exceptions are made for other portions of the Federal Rules of Civil Procedure. *See Abbott Lab.,* 51 F.3d at 527. No court has held, however, that such an overturning of *Zahn* is applicable to suits (such as this one) brought before 1990 when § 1367 went into effect. *Cf. More v. Intelcom Support Servs., Inc.,* 960 F.2d 466, 473 (5th Cir.1992) (noting that § 1367 "affects only cases filed on or after December 1, 1990"). Moreover, a lower court in our circuit has asserted that the notion that § 1367 has overturned *Zahn* at all "is the minority view and has not been followed in this Circuit." *See Bernard v. Gerber Food Prods. Co.,* 938 F.Supp. 218, 223 (S.D.N.Y.1996). In fact, this court has not squarely addressed the issue, and the Supreme Court has never considered it. Under the circumstances, we believe that a decision by us on the question at this time would be unwise.

. The parties' argument that aggregation is permitted in Rule 23.2 class actions, notwithstanding *Zahn,* is also a matter of first impression, not only in this circuit but in every circuit. There is some authority suggesting

---

**19.** 28 U.S.C. § 1367 provides, in pertinent part: (a) ... [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy....

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, 24 of the Federal Rules of Civil Procedure....

that "[s]ince [a Rule 23.2] suit was recognized as a true class suit under former Rule 23(a), it should follow that the common claims by or against the individual members of the unincorporated association can be aggregated to sustain jurisdictional amount requirements." *See* 3B James Wm. Moore et al., *Moore's Federal Practice* ¶ 23.2.02 at 23.2–7 to 23.2–8 (2d ed.1985) (footnote omitted). But no court has ever held that aggregation is permitted in a Rule 23.2 action.[20] And, once again, we deem it·inadvisable to decide this novel question at present.

To summarize: Recasting this suit as a class action and finding that, as such, jurisdiction exists presents substantial, though perhaps not insuperable, difficulties.[21] It runs against the affect, if not the strict holding, of the Seventh Circuit, which seems to believe that recharacterization opens a detour around *Carden*. And it would only resolve the jurisdictional problem in this case if we made a series of other holdings on issues of first impression in this circuit as to which we have no Supreme Court guidance. For all these reasons, we believe that deciding the validity of the class action approach and considering the subsidiary questions it entails, should, *in this case*, be undertaken only as a last resort, either by us or by the district court. Accordingly—though mindful of our action in *Curley*—we decline at this time to reconstrue the instant case as a class action. In doing so, we express no opinion as to whether it could ultimately be so recast, or on the subsidiary issues that would then need to be decided. Nor do we foreclose the district court—if all other avenues of finding jurisdiction fail—from addressing these questions in the first instance.[22]

### III

We therefore turn to the parties' alternative suggestion that this court save diversity jurisdiction by adding Merrett as an individual Name defendant and dismissing Haycock (at least, in his representative capacity) and retaining him in this suit (if at all) only as an individual Name. In this respect, the parties rely on *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989), where the Supreme Court held that, even on appeal, a court has the power to dismiss a dispensable nondiverse party from a suit under Rule 21 of the Federal Rules of Civil Procedure in order to salvage jurisdiction. *See id.* at 832–33, 109 S.Ct. 2218 (extending Rule 21 of the Federal Rules of Civil Procedure to appellate courts). The Supreme Court has recently stated that "Once a diversity suit has been tried in federal court ... considerations of finality, efficiency, and economy become overwhelming." *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, ——, 117 S.Ct. 467, 476, 136 L.Ed.2d 437 (1996). And it has emphasized that "requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention." *Newman–Green*, 490 U.S. at 836, 109 S.Ct. 2218. We approach the parties' suggestions with respect to Haycock and Merrett with these admonitions in mind.

As a preliminary matter, we must address the question of capacity because so much may ride on the distinction between a suit against Haycock or Merrett in their representative capacities and one against them as individuals. Capacity to·sue and be sued in federal court is governed by Fed. R.Civ.P. 17(b). The relevant portion of that

---

**20.** The only case we have found that has addressed (and rejected) the claim that aggregation is permitted in Rule 23.2 suits is *K. Bell & Associates., Inc. v. Lloyd's Underwriters*, No. 92 Civ. 5249, 1998 WL 274346, at *6 (S.D.N.Y. May 26, 1998) (Peck, M.J.).

**21.** It is up to the district court in the first instance to consider the applicability of Rule 23.2 and all the other relevant requirements for a class action. And, of course, the class action mechanism has its own perils. *See infra* (Jacobs, J., concurring).

**22.** We do not mean to·suggest that in an appropriate case, recharacterization should not be considered before other possibilities are examined. Given the length of time this case has been in federal court, however, our principal concern must—if possible—be to avoid basing jurisdiction on grounds that, because they depend on resolving subsidiary questions of first impression, may prove vulnerable to Supreme Court decisions on those questions (whether in this case or in other cases) with the result that the parties would have to start all over again after twenty years of litigation.

Rule says that a person's capacity to be sued as an individual (as opposed to as a representative) depends on the law of the person's domicile. Lack of capacity is generally not considered jurisdictional and is therefore waived if not specifically raised. *See* Fed. R.Civ.P. 9(a); 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1559, at 42 (2d ed.1990). However, if there is a possibility that a party with a valid capacity defense is strategically forgoing it to preserve federal jurisdiction, we believe it is proper for a federal court to assess the capacity of the parties *sua sponte. See* 28 U.S.C. § 1359 ("A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.").

In this case, the parties assert that *any* Lloyd's Name may be sued in his individual capacity directly by an insured. Some have suggested, however, that this may not be the case as a matter of British law (which would cover Haycock's and Merrett's capacity to be sued as individuals, assuming, as we do, that both are U.K. domiciliaries). *See Indiana Gas,* 141 F.3d at 321 (petition for rehearing) (stating, without citation, that English law does not permit such suits); *cf. also Roby v. Corporation of Lloyd's,* 796 F.Supp. 103, 106 (S.D.N.Y.1992) (Lasker, *J.*) (quoting an English barrister's affidavit indicating that the Names in a Lloyd's syndicate cannot be bound by *res judicata* unless a suit is brought against all of the individual Names or against a representative Name). We take no position on the question of whether British law and the contracts in dispute in this case would permit a suit to proceed against a Name in his or her individual capacity. Instead, we include this among the issues to be resolved by the district court on remand.[23] The following discussion of federal jurisdiction over an action brought against a Name in his individual capacity assumes without deciding that the district court will determine

that such a suit is proper under Rule 17(b) and the contracts at issue here.

■ Whether it is possible to add Merrett in his individual capacity and subsequently to dismiss Haycock—either altogether or just in his representative capacity—and whether such steps, if feasible, would suffice to preserve jurisdiction in *this* case is something that the district court must, in the first instance, decide. But we do conclude that, if Haycock and Merrett properly remain in this suit only in their individual capacities, the existence of jurisdiction will depend solely on *their* citizenship—which is admittedly diverse—and on *their* meeting the requisite jurisdictional amount. It will not depend on the status of the other Lloyd's Names who, though members of the syndicates at risk, would no longer be direct parties to the litigation.

■ The fact that a Lloyd's policy contractually binds each of the underwriting Names to whatever judgments are rendered against any Name sued does not require us to consider the citizenship of unspecified Names who are not before the court, so long as the only Name sued is properly in the litigation solely as an individual and not as a representative.[24] Thus, we regularly exercise diversity jurisdiction in cases where non-diverse individuals or groups who are not direct parties to the litigation nevertheless have a crucial interest in its outcome. For example, jurisdiction exists when the diverse parties are, by contract, bound to be indemnified by non-diverse non-parties. *See Wheeler v. City of Denver,* 229 U.S. 342, 348, 350, 33 S.Ct. 842, 57 L.Ed. 1219 (1913) (holding that jurisdiction exists in such cases so long as the diverse parties exercise control over the litigation). And the fact that a case will almost certainly determine the rights of innumerable non-diverse litigants through collateral estoppel or preclusion in no way affects our jurisdiction if the party being

---

**23.** The answer to this inquiry may be that the only Names who may be sued in their individual capacities are the lead underwriters. We need not decide, and therefore express no views on, whether such a state of affairs would render a suit brought against a lead underwriter as an individual effectively one against him in his representative capacity.

**24.** Again, the jurisdictional test turns on whether the party being sued is a real party to the controversy, *see Navarro,* 446 U.S. at 461, 100 S.Ct. 1779, and courts lack jurisdiction only when the person actually sued has "by assignment or otherwise, ... been improperly or collusively made or joined to invoke the jurisdiction of [the] court," 28 U.S.C. § 1359.

directly sued is a real party to the controversy.[25]

There is no doubt that in their individual capacities Haycock and/or Merrett are real parties to this controversy because both are severally liable as Names on Squibb's policy. It follows that, if the Lloyd's Names represented by a lead underwriter are dispensable parties, *see infra*, then once these Names have been dropped from the suit, only the Name or Names who remain need to be completely diverse, given that they are themselves potentially liable and are being sued in their individual capacity.

In this respect it is easy to distinguish such a suit from a suit against a limited partnership. A limited partnership, like other unincorporated associations, is a formal entity. And, not by chance, the Supreme Court in *Carden* emphasized the importance of the existence of such an artificial entity in its holding that every limited partner must have diverse citizenship. *See Carden*, 494 U.S. at 187–88 n. ', 110 S.Ct. 1015. Indeed, *Carden*'s express language applies only to "artificial entities created by state law." *See id.* at 187, 110 S.Ct. 1015. There is, moreover, no language whatsoever in the *Carden* opinion suggesting that it was meant to govern situations where no formal entity is being sued. We therefore conclude that *Carden* only refers to situations in which a formal entity is a named party to a diversity action.

It might be argued, however, that *Carden* should be read to go beyond formal entities and also cover individuals bound by contract in such a way that they might be said to form a "constructive entity." But even if *Carden* could be read to cover constructive entities created by contract, a Lloyd's policy seemingly does not create such an entity. The contractual provision that obligates a Name to abide by a judgment rendered against any other Name runs *vertically* between *the insured and each Name*, not *horizontally from Name to Name*. As a result, the Lloyd's policy is more aptly described as a series of independent bilateral contracts from insurer to insured than as a set of intertwining agreements uniting the Names in a manner analogous to a limited partnership. It is possible that horizontal contractual arrangements among the Names and the lead underwriters may create a constructive entity, but based just on the vertical contracts, a group of Lloyd's Names is far less of an entity than groups bound by contract to each other to which *Carden* has never been thought to apply (e.g., the standard indemnity situation in which the indemnitor and indemnitee are contractually linked).

Nor does the fact that the individual Names hire a lead underwriter to be their agent for various administrative purposes alone suffice to create a constructive entity. A set of individuals may and often do share an insurance broker. But that has never been deemed relevant for jurisdictional purposes. It only becomes different when the agent is sued *as a representative* of these individuals. In that situation, the doctrine of *Northern Trust* controls and, as we said earlier, the citizenship of each person has to be completely diverse unless one of the three exceptions to the rule—corporations, trusts, or class actions—applies. *See Northern Trust*, 899 F.2d at 594.[26]

**25.** We have found no cases in which the collateral estoppel or preclusion effect on nondiverse parties of a judgment rendered for or against a diverse party was used successfully to attack the original judgment on jurisdictional grounds. In a somewhat similar situation, moreover, the Fifth Circuit stated: "The citizenship of one who has an interest in the lawsuit but who has not been made a party to the lawsuit by plaintiff cannot ... defeat diversity jurisdiction." *See Plains Growers, Inc. v. Ickes–Braun Glasshouses, Inc.*, 474 F.2d 250, 252 (5th Cir.1973).

**26.** The distinction between a suit against a representative and a suit against an individual—a judgment for or against whom binds others by contract—is not merely formal. For example, those Names bound by contract to abide by a judgment against an *individually* sued underwriter may, under certain circumstances, have defenses unavailable to Names *represented* by the same lead underwriter. Thus, at oral argument, Squibb stated that it had chosen to sue the lead underwriter as a representative rather than solely as an individual because the latter suit might raise collection problems for an insured. The district court may consider collectibility and the prospect of multiple future collection lawsuits, in deciding whether to exercise its discretion under the Declaratory Judgment Act to let the new claim proceed against Merrett in his individual capacity.

The fact that only certain individuals (i.e. members of the Lloyd's market) may participate in the bilateral contracts described above is irrelevant for jurisdictional purposes. If a broker on the New York Stock Exchange enters into a contract with a company listed on that exchange

In sum, the Lloyd's market, because of its unusual legal arrangements: (a) can sometimes be covered by *Northern Trust* (e.g. whenever the lead underwriter is being sued in his representative capacity); but (b) can also be no more than an assortment of people whose only common ties are that they all may have legally independent contractual arrangements with the same insured and have hired the same agent (lead underwriter). If a Name is properly sued solely in his individual capacity to establish his individual liability, it is the latter relationship that defines the case for jurisdictional purposes. In such a case, that individual, with diverse citizenship, is before the court because he may be liable. And the fact that, if he is liable, others will—by contract, preclusion, or both—also have to pay is no more relevant than in the standard diversity torts case in which other, non-diverse, parties may, by contract of indemnity, by preclusion, or by both, ultimately have to answer for part of the judgment awarded.

### IV

Unfortunately, however, we are ill-suited to decide today whether Haycock can be dismissed in his representative capacity as a "dispensable party" pursuant to *Newman–Green*, New York law, and Rule 19 of the Federal Rules of Civil Procedure.[27] The dispensibility of the Names represented by Haycock not only involves fact questions that we are not equipped to address, it also raises issues of law upon which there has been no briefing by the parties. The lack of briefing together with the factual questions on which an answer to the Rule 19 inquiry may depend

induce us not to decide the issue on appeal but to remand it and various other related questions to the district court instead.

On remand, the district court must pay due attention to *Newman–Green* and *Caterpillar*'s statements about the desirability of preserving jurisdiction. But it must also "carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation." *Newman–Green*, 490 U.S. at 837–38, 109 S.Ct. 2218. As such, it must examine critically the claim of at least one Appellant (Continental Casualty Co.) that it will be prejudiced by a recharacterization of this suit. In this respect, it must also consider whether the dismissal of only one aspect of a single defendant's dual participation in a suit—in this case Haycock's representative function as opposed to his individual role—is the equivalent of dismissing a "party" to the litigation under *Newman–Green*. And, if it finds that such partial dismissal presents particular problems, it must determine whether a total dismissal of Haycock is appropriate and feasible. But, most important, it must address, after briefing by the parties, the question of the indispensability, under Rule 19 and New York law, of the Names currently represented by Haycock.[28]

Furthermore, it must consider the questions (a) of whether Merrett can be added as a party defendant, and (b) of the jurisdictional amount to which he and Haycock are subject. In this respect, we see no special difficulty with adding Merrett as a party. *See* Fed.R.Civ.P. 21 ("Parties may be

---

that states that, rather than litigating a dispute between them, they will both abide by the results of similar suits between that company and another broker, it is not the case that the citizenship of both brokers is relevant for diversity. And yet both the company listed on the exchange and the brokers, like the Lloyd's Names, need approval to become part of the select group to which they belong.

27. We have stated that "[t]he question [of] whether a party may be dismissed from an action is essentially governed by Fed.R.Civ.P. 19." *See Curley*, 915 F.2d at 89. "To be sure, state-law questions may arise in determining what interest the [party] actually has, but the ultimate question whether, given those state-defined interests, a federal court may proceed without the [party] is

a federal matter." *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 n. 22, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (citation omitted).

28. Permission to drop parties who are not indispensable generally lies in the discretion of the district court. *See* Fed.R.Civ.P. 21. In this case, however, after sixteen years of litigation, the Supreme Court's admonition in *Newman–Green* and in *Caterpillar* gives a clear indication as to how that discretion should be exercised if dropping parties would preserve jurisdiction and not cause undue prejudice. We emphasize, however, that the same result might not be appropriate were the issue to arise at the beginning of a litigation. In such a case, the usual factors guiding the court's discretion would prevail.

dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."). But it is far from clear whether Merrett must meet: (1) the $10,000 amount in controversy mandated when the suit was begun, *see* 28 U.S.C. § 1332(a) (1982), *amended by* Pub.L. No. 100–702, Tit. 11 § 201(a), 102 Stat. 4646 (1988) (increasing the requisite amount to $50,000), *and* Pub.L. No. 104–317, Tit. 11, § 205(a), 110 Stat. 3850 (1996) (raising the amount to $75,000); (2) the current amount in controversy of $75,000, *see* 28 U.S.C. § 1332(a) (Supp.1998); or (3) no amount in controversy at all, *see* 28 U.S.C. § 1332(a)(3). Unless, moreover, he meets whatever requirement applies to him, adding him would be futile and the motion to do so should be denied.

We are skeptical that § 1332(a)(3) can be read so broadly as to eliminate entirely the amount-in-controversy requirement for foreign subjects. But that issue—like the question of whether the relevant amount is that which governed when the suit was brought or is the current amount—will be mooted if Merrett meets the $75,000 amount in controversy now required. Accordingly, we decline to decide them. Should the district court find that they must be addressed in order to determine whether Merrett ought to be added, it can deal with them then.

### V

Accordingly, the district court, on remand, should first consider whether Merrett meets the jurisdictional requirements and, hence, whether he should in the ordinary course be added as a party defendant. Next, the court should determine whether the suit can proceed without a defendant who formally represents the Lloyd's Names, that is, whether Squibb can sue Merrett and/or Haycock only in their individual capacities.[29] For such individual suits to proceed, the district court must find: (1) that such a suit is permitted as a matter of both British law and the contracts of this case;[30] (2) that the previously

represented Lloyd's Names are dispensable parties under Rule 19 and New York law and therefore can be dropped; (3) that no undue prejudice to any defendant is created by recharacterizing the suit as one that is brought solely against an individual Lloyd's Name; (4) that Haycock can, under *Newman–Green,* be dropped in his representative capacity only; or (5) if Haycock must be totally dismissed, that (after the addition of Merrett) Haycock is a dispensable party and hence can be excused from the case.

If a suit against Merrett and/or Haycock as an individual is not possible, then and only then should the district court consider whether Squibb's complaint ought to be recast as a Rule 23.2 class action against the Lloyd's underwriters. Before recharacterizing this suit as a Rule 23.2 action, the district court must determine whether the Lloyd's underwriters constitute a proper Rule 23.2 class and, if they do, whether and by whom the amount-in-controversy requirement must be met. If each and every Name does not meet the amount in controversy, the court must then decide: (1) whether 28 U.S.C. § 1367 has overruled *Zahn* retroactively and permits aggregation in class actions of this sort; (2) whether aggregation is permitted nonetheless in a Rule 23.2 class action; or (3) whether 28 U.S.C. § 1332(a)(3) has abolished the amount-in-controversy requirement for foreign subjects, leaving only the citizen Names subject to the requirement.

### VI

We hold that when a Lloyd's lead underwriter is sued in a representative capacity (but not in a class action) each and every Name whom the lead underwriter represents must be completely diverse. But we also hold that when a Lloyd's Name (including a lead underwriter) is properly sued only in an individual capacity, it is that Name's characteristics, both as to citizenship and jurisdictional amount, that are determinative for jurisdictional purposes. And the fact that other

---

**29.** Of course, on remand there is also the possibility that all of the Names will turn out to be completely diverse and will each meet the amount in controversy requirement. In that case, there would be diversity jurisdiction in this case.

**30.** Given the possible significance of this case for all Lloyd's insurance policies, the district court may wish to solicit an amicus brief from the Society of Lloyd's on this point, particularly since this Court may do so on any appeal.

Lloyd's underwriters who are not diverse parties in the suit may be bound by the result of the suit (whether by contract or by preclusion) is of no consequence. All other issues in this case we decline to decide and remand to the district court.

Although we are vacating and remanding after sixteen years of federal litigation, we do so reluctantly and in the spirit of *Newman–Green* in an attempt to salvage federal jurisdiction, if jurisdiction can be saved by means of the alternatives we have presented and within the limits set by the relevant statutes and holdings of the Supreme Court.

The judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.[31] This panel will retain jurisdiction—such as it is—over any subsequent appeals.

JACOBS, Circuit Judge, concurring:

I subscribe to the opinion of the Court because it is sound as far as it goes, because it prudently avoids answering factual or discretionary questions that are stirred up in the wake of the belated jurisdictional inquiry, and because these questions are properly confided by the opinion to the fact-finding resources and sound discretion of the district judge. I write separately only to list some open questions:

Is a syndicate an entity within the meaning of *Carden v. Arkoma Assocs.*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990)? Assuming that the *vertical* contractual undertaking (by which each Name takes on a sliver of the policyholder's risk) does not create a *Carden* entity, is a *Carden* entity formed by *horizontal* contractual undertakings among the Names and with the head underwriters? We know that Names designate an underwriter to conduct business on their behalf, that the underwriter negotiates and subscribes to risks on their behalf, and that the members divide profit and loss. Do the members also pay a share of overhead, sala-

ries and commissions? Are they assessed (or are they debited) a share of attorneys' fees in cases such as this one? What is the contractual or other basis for such obligations?

The premise for a ruling that a syndicate is a non-entity under *Carden* would be that any one Name at all can be sued (rather than a head underwriter), and a judgment against that member binds all other Names. Is that in fact how it works, notwithstanding the possibility that there may be one or more disgruntled, judgment-proof Names who might default on a large claim without notice to anyone else? Does the Society of Lloyd's agree?

Some Names of some syndicates have alleged fraud in the inducement of Name status. *See, e.g., Stamm v. Barclays Bank,* 153 F.3d 30 (2d Cir.1998) *(per curiam )*. Does that impact upon the efficacy of a Declaratory Judgment action against one Name to achieve collection of the whole insurance obligation, or the viability of class action (if opt-outs are permitted)?

If a syndicate is not an entity within the meaning of *Carden,* can its members constitute a class under Fed.R.Civ.P. 23.2, which affords class status to members of unincorporated associations?

If a syndicate is a non-entity under *Carden,* but has members who can constitute a Rule 23.2 class, which among them (if any) must meet the amount-in-controversy minimum? Is aggregation allowed in class actions generally and in Rule 23.2 class actions specifically? Is notice and the right to opt-out pursuant to Rule 23(c)(3) also a requisite under Rule 23.2, generally or in respect of this claim? *See generally* 7C Charles Alan Wright, et al., *Federal Practice and Procedure* § 1861, at 220–22 (2d ed.1986).

---

31. The bulk of the record in this case is currently under seal. On remand, we urge the district court—if it finds that jurisdiction exists—to reconsider skeptically the need to keep so much material secret. The public is generally better served by open records. *See Video Software Dealers Ass'n v. Orion Pictures Corp. (In Re Orion Pictures Corp.),* 21 F.3d 24, 26 (2d Cir.1994).

And agreement of the parties is never an adequate ground for sealing a record. *See City of Hartford v. Chase,* 942 F.2d 130, 136 (2d Cir. 1991) (stating that "the trial court—not the parties themselves" must determine whether documents related to a settlement agreement should be sealed).