# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1021

_____

United States of America,  *
                           *
            Appellee,      *
                           *
    v.                     *
                           *
Jose Guadalupe Jimenez-Villasenor,  *  Appeals from the United States
also known as "Grenas,"    *  District Court for the District
                           *  of Minnesota
            Appellant.     *

_____

No. 01-1350

_____

United States of America,  *
                           *
            Appellee,      *
                           *
    v.                     *
                           *
Alejandro Flores-Romero,   *
                           *
            Appellant.     *

_____

Submitted: October 16, 2001

Filed: November 2, 2001

_____

Before BYE, BRIGHT and RICHARD S. ARNOLD, Circuit Judges.
_____

BYE, Circuit Judge.

In the wake of a ten day trial, Guadalupe Jimenez-Villasenor a/k/a "Grenas" and Alejandro Flores-Romero a/k/a "Alex" were both convicted of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846. Jimenez-Villasenor appeals his conviction only, specifically challenging the sufficiency of the evidence. Flores-Romero appeals both his conviction and sentence. With respect to his conviction, Flores-Romero argues that the district court[1] clearly erred in finding that he was competent to stand trial. With respect to his sentence, Flores-Romero argues that the district court clearly erred in holding him responsible for 1.33 kilograms of methamphetamine. We affirm the judgments of the district court with respect to Jimenez-Villasenor's conviction and Flores-Romero's conviction and sentence.

**I**

Between 1998 and 1999, the Drug Enforcement Agency ("DEA") developed information on a group of individuals responsible for transporting large quantities of methamphetamine and cocaine from California to Minnesota. Jimenez-Villasenor and Jesus Ibarra-Torres were identified as the main distributors of methamphetamine and cocaine for an organization in the St. Paul, Minnesota area. In late 1999, the DEA obtained a court order authorizing the electronic monitoring of cellular phones used by Jimenez-Villasenor and Ibarra-Torres. As a result, the DEA identified Juan Gabriel Rosas as the organization's primary drug source in California, and Rosas's brother, Jaime Rosas Mancilla, as the supervisor of the transportation of drugs between California and Minnesota.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

## A. Jimenez-Villasenor's Appeal

Jimenez-Villasenor contends that the government's evidence was insufficient to support the inference that he agreed to participate in the conspiracy. Specifically, Jimenez-Villasenor contends that the only evidence against him consisted of a false identification card and an address book with the names and phone numbers of the members of the conspiracy. Jimenez-Villasenor further contends that, although the government monitored many telephone calls, there were no express references to narcotics during the approximately 45 intercepted telephone calls.

When reviewing a jury verdict for sufficiency of the evidence, we review the evidence in the light most favorable to the verdict and accept all reasonable inferences as established. United States v. Romero, 150 F.3d 821, 824 (8th Cir. 1998). A conviction is reversed only if no reasonable jury could have concluded that the defendant was guilty beyond a reasonable doubt on each essential element of the charge. United States v. Rogers, 91 F.3d 53, 57 (8th Cir. 1996). This standard is a strict one, and a jury verdict should not be overturned lightly. United States v. Sykes, 977 F.2d 1242, 1247 (8th Cir. 1992).

To prove that Jimenez-Villasenor was a member of the conspiracy to distribute controlled substances, the government had to demonstrate (1) that there was a conspiracy, an agreement to distribute controlled substances, (2) that the defendant knew of the conspiracy, and (3) that the defendant intentionally joined the conspiracy. Romero, 150 F.3d at 824. The government may prove an agreement wholly by circumstantial evidence or by inference from the actions of the parties. United States v. Shoffner, 71 F.3d 1429, 1433 (8th Cir. 1995). But "a defendant's mere presence, coupled with the knowledge that someone else who is present intends to sell drugs, is insufficient to establish membership in a conspiracy." Id. Once the existence of a conspiracy has been established, however, "'even slight evidence connecting a

defendant to the conspiracy may be sufficient to prove the defendant's involvement.'" Id. at 1434 (quoting United States v. Agofsky, 20 F.3d 866, 870 (8th Cir. 1994)).

Here, the evidence showed that there was an agreement between Rosas and Jimenez-Villasenor to distribute methamphetamine, that Jimenez-Villasenor knew of the agreement, and that he voluntarily entered into it. The evidence at trial established that when the methamphetamine and cocaine arrived in Minnesota, Jimenez-Villasenor supervised and managed several of the co-conspirators, including Flores-Romero, in distributing the drugs. In its case-in-chief, the government presented more than one hundred trial exhibits, including 57 transcripts of intercepted telephone calls, 45 of which were placed between Jimenez-Villasenor and co-conspirators relating to drugs. In particular, the government introduced a series of calls between Jimenez-Villasenor and Rosas during which they discussed a 30 pound shipment of methamphetamine from California to Minnesota. Because of the intercepted calls, law enforcement seized this shipment of methamphetamine on October 24, 1999. Although there were no express references to narcotics during the intercepted phone calls, a special agent for the DEA testified that the members of this conspiracy used code words to discuss drugs. The special agent had been a narcotics investigator for more than 26 years, had participated in approximately 1,000 narcotics investigations, reviewed thousands of wiretap transcripts and debriefed at least 500 drug dealers.

Furthermore, authorities obtained a search warrant for Jimenez-Villasenor's house which produced a loaded firearm, cash, ammunition, digital scale and drug notes containing the names of the other members of the conspiracy and the balances each owed. Given the intercepted telephone calls, the special agent's testimony, as well as the evidence seized from Jimenez-Villasenor's house, all of which pointed to drug trafficking, a reasonable jury could have concluded that Jimenez-Villasenor was guilty of conspiring to distribute methamphetamine beyond a reasonable doubt.

## B. Flores-Romero's Appeal

### 1.    Flores-Romero's Conviction

Flores-Romero argues that the district court clearly erred when it found that he was competent to stand trial. Flores-Romero contends that the side-effects of his anti-psychotic medication caused him to be sleepy and drowsy during trial, and that his drowsiness prevented him from participating in the trial process and communicating with his attorney. We review a district court's finding that a defendant is competent to stand trial for clear error. Vogt v. United States, 88 F.3d 587, 591 (8th Cir. 1996).

"Due process prohibits the trial and conviction of a defendant who is mentally incompetent." Id. at 590. Absent some contrary indication, trial judges may presume that defendants are competent, Branscomb v. Norris, 47 F.3d 258, 261 (8th Cir. 1995), thus the burden of persuasion rests with Flores-Romero to show that he was incompetent to stand trial by a preponderance of the evidence. Vogt, 88 F.3d at 591 (citations omitted). In determining whether a defendant is competent to stand trial, the test is whether the defendant had "a sufficient present ability to consult his lawyer with a reasonable degree of rational understanding—and whether the defendant ha[d] a rational as well as factual understanding of the proceedings against him." Id. at 591 (citing Dusky v. United States, 362 U.S. 402, 402 (1960)). Not every manifestation of mental illness demonstrates incompetence to stand trial, and treatment with anti-psychotic drugs does not automatically render a defendant incompetent to stand trial. Vogt, 88 F.3d at 591. The defendant must present evidence that his dosage affected him sufficiently adversely so as to prevent him from being able to consult with his lawyer and to prevent him from having a rational understanding of the proceedings against him. Id. at 590-91.

Before trial, Flores-Romero underwent a competency evaluation. Thereafter, the magistrate judge held a hearing to determine whether Flores-Romero was competent to stand trial. The magistrate judge heard from Flores-Romero's psychologist and the government's clinical psychologist, and determined that Flores-Romero suffers from a major depressive disorder that is in partial remission as a result of treatment with psychotropic medications. The magistrate judge further determined that Flores-Romero did not suffer from mental disease or defect to the extent that he was unable to understand the nature and consequences of the proceedings against him or to the extent that he was unable to consult with his attorney effectively and assist in his defense. The magistrate judge ultimately concluded that Flores-Romero was competent to stand trial and, on appeal, the district court affirmed the magistrate judge's conclusion.

Approximately one month before trial, Flores-Romero's drug regimen changed and his dosages increased. He was prescribed two anti-psychotic medications, Zyprexa and Seroquel, and an anti-depressant, Doxepin. Doxepin was prescribed at 50 milligrams above the recommended outpatient dosage. All three medications have sedating side-effects. On the first day of trial, Flores-Romero filed a motion for competency re-examination and a motion seeking the suspension of his medication. Counsel for Flores-Romero was concerned that the increase in medication would impair Flores-Romero's ability to participate in his defense. The district court noted that Flores-Romero was voluntarily taking the medication and expressed concern about the harmful effects that could result if his medication was suspended by court order. Additionally, the court noted that there was no evidence to indicate that suspending Flores-Romero's medication would be helpful. The court reserved ruling on these motions and indicated that Flores-Romero's competency would remain an issue throughout trial.

Immediately thereafter, the district court addressed Flores-Romero directly and asked him if he understood that he was in a courtroom. Flores-Romero responded

that he did. The court asked Flores-Romero who his attorney was and he responded accurately. The court then asked if he had had adequate time to talk to his attorney about the case and he responded in the affirmative. The district court noted that Flores-Romero appeared drowsy during jury selection, but was alert through the entire 35-minute court session relating to his competency, and that he made appropriate responses to the court's questioning. The court further found that Flores-Romero was tracking the proceedings and understood their nature.

On the second day of trial, the district court seated a plain-clothed marshal to sit by Flores-Romero to make sure that he stayed awake for the testimony. At the end of that day, the court noted that throughout the afternoon, Flores-Romero was attentive and was paying attention to the testimony. The marshal indicated that Flores-Romero "nodded off" a couple of times during the second day. At the end of the third day of trial, the district court noted that Flores-Romero had been awake and alert throughout the day. The marshal indicated that he had to "assist" Flores-Romero a couple of times in the morning. On the fourth day of trial, the district court noted that Flores-Romero was less alert in the morning than on the day before, but quite alert throughout the entire afternoon's proceedings and a significant portion of the morning. The court did note that Flores-Romero sometimes appeared to be very drowsy. On the fifth day of trial, the court noted that Flores-Romero did appear drowsy periodically throughout the morning, had been alert throughout the afternoon and conversed with his attorney during some testimony. On the sixth day of trial, Flores-Romero indicated that he wished to waive his right to testify. The district court had Flores-Romero approach the bench, and made sure that he understood that he had the right to testify and that he had discussed this right with his attorney. Thereafter, the court elicited from Flores-Romero's attorney a statement that he advised Flores-Romero not to testify, irrespective of the sedative effects of the medicine. See Jury Trial Proceeding Transcript (Day 6) 50-51.

Upon revisiting the earlier motions raised by Flores-Romero, the district court denied his motion to order the suspension of his medication, finding that he was taking the medication voluntarily. The court also concluded, based on her own observations during the trial plus the magistrate judge's finding of competency and medical testimony, that Flores-Romero was competent. The court noted the lack of evidence presented by Flores-Romero to show that he was incompetent.

After the guilty verdict was returned, a post-conviction competency evaluation was performed, and a post-competency hearing was held. The government's psychologist testified that Flores-Romero was malingering and exaggerating his symptoms. The government's psychologist also opined that it was possible that sedating side effects from prescribed psychiatric medications could have led to decreased alertness of Flores-Romero during the trial, however, there was no evidence that symptoms of any genuine mental illness negatively affected Flores-Romero's ability to understand or participate in the proceedings. Flores-Romero's physician didn't disagree with the government's view that Flores-Romero was malingering and exaggerating his symptoms. And, although Flores-Romero's physician testified as to the sedative side-effects of the medication, she could not conclude that Flores-Romero's drowsiness during the trial was a result of the medication he was taking. The district court ultimately concluded, based on the court's independent observations of Flores-Romero both at trial and during subsequent court appearances, the testimony of experts, and the entire record, that Flores-Romero was competent.

As the record stands, we cannot say that the district court clearly erred. Although Flores-Romero was ingesting increased dosages of prescribed medication, and at times appeared drowsy during trial, the court did an adequate job of monitoring the situation by documenting Flores-Romero's level of alertness each day of trial. The district court, who had an opportunity to converse with Flores-Romero and observe his demeanor, did not perceive reasonable cause to believe that he was

incompetent. See Sturgis v. Goldsmith, 796 F.2d 1103, 1109 (9th Cir. 1986) (explaining that the defendant's demeanor and behavior in the courtroom can often be as probative on the issue of his competence as the testimony of expert witnesses). Because the record fails to substantiate Flores-Romero's contention that the sedative side-effects of his medication rendered him incompetent to stand trial, the district court did not err in finding Flores-Romero competent to stand trial.

## 2.    Flores-Romero's Sentence

Flores-Romero contends that there was insufficient evidence supporting the court's determination that he was responsible for 1.33 kilograms of methamphetamine. He also argues that the district court failed to rule on his objections to the Presentence Investigation Report (PSR). Because a sentencing court's quantity calculations are factual findings, we review them for clear error. United States v. Ortega, 150 F.3d 937, 945 (8th Cir. 1998), cert. denied, 525 U.S. 1087 (1999).

A defendant convicted of conspiracy to distribute controlled substances is held responsible for all reasonably foreseeable drug quantities that were in the scope of the criminal activity that he jointly undertook. United States v. Scott, 91 F.3d 1058, 1062 (8th Cir. 1996). The district court may consider all drugs that were a part of the same course of conduct, or common scheme or plan as the conspiracy. United States v. Fraser, 243 F.3d 473, 474 (8th Cir. 2001). The government need only prove drug quantities by a preponderance of the evidence. United States v. Padilla-Pena, 129 F.3d 457, 467 (8th Cir. 1997).

The PSR attributed 1.33 kilograms of methamphetamine to Flores-Romero. The probation officer's calculations were based on the 4 ounces of methamphetamine that Flores-Romero discussed with Jimenez-Villasenor on October 8, 1999, the 3 ounces of methamphetamine discussed on October 13, 1999, the 2 pounds of

methamphetamine that Flores-Romero owed Ibarra-Torres, and 1/2 pound of methamphetamine discussed on October 16, 1999. The district court did not clearly err in holding Flores-Romero responsible for 1.3 kilograms[2] of methamphetamine in light of the evidence.

Also, the drug notes recovered from Jimenez-Villasenor's house reflect balances of $20,000, $7,999, $7,300 and $6,000 next to the name "Alex," Flores-Romero's street name. These figures are consistent with purchases of pounds of methamphetamine, not ounces as Flores-Romero contends. Flores-Romero also argues the district court erred in not deducting any amount for his personal use of methamphetamine. This argument is without merit. See United States v. Brown, 19 F.3d 1246, 1248 (8th Cir. 1994) (holding that in a drug conspiracy case it is not error to include purchases for personal use in a drug quantity finding).

Furthermore, the jury returned a verdict of guilty on the crime of conspiracy to distribute and to possess with the intent to distribute methamphetamine and/or cocaine, as charged in Count One of the Indictment, which specifically charged Flores-Romero with "knowingly and intentionally conspiring . . . to distribute and to possess with the intent to distribute in excess of 500 grams of methamphetamine . . . ." Therefore, even if the district court's drug quantity finding were erroneous (and we think not), the base offense level required by the jury's verdict would be 32, which applies to more than 500 grams of methamphetamine but less than 1.5 kilograms of methamphetamine. The district court therefore did not err in sentencing Flores-Romero at a base offense level 32.

_____

[2]Flores-Romero argues the district court erred in holding him responsible for 1.33 kilograms of methamphetamine. Although the PSR reflects that Flores-Romero was responsible for 1.33 kilograms of methamphetamine, a review of Flores-Romero's sentencing transcript indicates that the district court held Flores-Romero responsible for 1.3 kilograms of methamphetamine. The difference between these quantities, however, does not affect Flores-Romero's sentencing guideline calculation.

Flores-Romero further challenges his sentence, contending that the district court violated Federal Rule of Criminal Procedure 32(c)(1) by failing to rule on his objections to the PSR prior to pronouncing his sentence. Flores-Romero objected to the quantity of drugs that were attributed to him. Rule 32(c)(1) requires the sentencing judge to give the defendant and the government the opportunity to comment on the PSR and requires the district court to "rule on any unresolved objections to the presentence report." Further, "[f]or each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." Fed. R. Crim. P. 32(c)(1). "We have consistently held that when a defendant objects to portions of the PSR, the district court must base its findings on evidence rather than on the disputed PSR information." United States v. Mayer, 130 F.3d 338, 339 (8th Cir. 1997). The court may "consider any evidence in its sentencing determination as long as it has sufficient indicia of reliability to support its probable accuracy." United States v. Behler, 14 F.3d 1264, 1273 (8th Cir. 1994) (internal quotations omitted). In cases where the district court also presided over the trial, the court may rely on evidence submitted at trial, during the sentencing hearing, and on uncontested statements from the defendant's presentence report. See United States v. Delpit, 94 F.3d 1134, 1154 (8th Cir. 1996).

At the outset of the sentencing hearing, the district court stated that it had received the motion for downward departure and the defense's position with respect to sentencing consideration as well as the government's position on those issues. The district court then heard the parties' respective arguments. Ultimately, the district court, which presided over the trial, held Flores-Romero responsible for 1.3 kilograms of methamphetamine and based its finding on the testimony adduced at trial and the evidence of record. See United States v. Fetlow, 21 F.3d 243, 249 (8th Cir. 1994) ("The district court's statement that the quantity determinations and sentence enhancements were based on the trial testimony and evidence presented at the sentencing hearing provide a sufficient basis for adequate appellate review.").

Because the district court satisfied the requirements of Rule 32(c)(1), we affirm Flores-Romero's sentence.

## II

We thus affirm the judgments of the district court with respect to Jimenez-Villasenor's conviction and Flores-Romero's conviction and sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.