# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1162

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Justin Gabriel Hernandez, | * | |
| also known as Jay, | * | |
| also known as Manuel Hernandez, | * | |
| also known as Joshua Thomas Romero, | * | |
| also known as Patrick Joseph | * | |
| Campanella, also known as Justin West, | * | |
| also known as Michael Jerry Garcia, | * | |
| also known as Phillip S. Varela, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 12, 2002

Filed: August 22, 2002

_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.

_____

BEAM, Circuit Judge.

Justin Gabriel Hernandez was convicted by a jury of conspiracy to distribute and possess with intent to distribute methamphetamine, cocaine, and marijuana, in violation of 21 U.S.C. § 846, and of distribution and possession with intent to

distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). The district court[1] sentenced him to 360 months' imprisonment. Hernandez appeals his conviction and sentence, claiming a variety of errors. We affirm.

## I.      SUFFICIENCY OF THE EVIDENCE

Hernandez first argues that the evidence was insufficient to support his conviction for conspiracy to distribute methamphetamine. Reviewing a jury verdict for sufficiency of the evidence requires us to review the evidence in the light most favorable to the verdict, accepting all reasonable inferences as established. United States v. Jimenez-Villasenor, 270 F.3d 554, 558 (8th Cir. 2001). A conviction by a jury is reversed only if no reasonable jury could have concluded that the defendant was guilty beyond a reasonable doubt on each essential element of the charge. Id. "This standard is a strict one, and a jury verdict should not be overturned lightly." Id.

To prove that a defendant was a member of a conspiracy to distribute controlled substances, the government must demonstrate that there was a conspiracy (or agreement) to distribute controlled substances, that the defendant knew of the conspiracy, and that he intentionally joined the conspiracy. Id. A defendant's mere presence and knowledge that someone else who was present intended to sell drugs are insufficient to establish membership in a conspiracy. Id. However, the government may prove a conspiracy by circumstantial evidence or by inference from the parties' actions. Id. Once a conspiracy's existence has been established, slight evidence connecting a defendant to it may be sufficient to prove the defendant's involvement. Id.

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

At trial, Melanie Tucker and Hoyt Matthew Hedgecock, also known as "Matt," testified against Hernandez pursuant to agreements to cooperate with the government in exchange for motions to reduce their sentences. Hernandez contends that:

> the Government's case consisted of the testimony of two cooperating witnesses – Mr. Hedgecock and Ms. Tucker – who made vague statements as to the nature and extent of Mr. Hernandez's participation in the alleged conspiracy. Their testimony was filled with assumptions and speculation as to the identities of individuals in Colorado who were allegedly supplying drugs and the reasons that Mr. Hernandez was associating with them. There were also inconsistencies and statements lacking credibility in their testimony.

Although Hernandez' argument may implicate the credibility of the government's witnesses, assessments of credibility are the province of the fact-finder. United States v. Davis, 103 F.3d 660, 674 (8th Cir. 1996). He fails to undermine the sufficiency of the evidence. For instance, the government presented testimony by Hedgecock that Hernandez owed a drug distributor from Denver, known as "Jeremy," "a lot of money" and "so Jeremy sent [Hernandez] out to Nebraska so he could make a little money." After Hernandez came to Nebraska, he moved in with Hedgecock. Hedgecock testified that he and Hernandez started getting larger quantities of drugs from Jeremy because Hernandez was "more trustworthy" than Hedgecock's previous co-distributor. Hedgecock further testified that Hernandez traveled to Denver several times with either himself or Tucker to bring drugs back to Nebraska, and that on one occasion, they obtained from Jeremy approximately a pound of methamphetamine, a half-kilo of cocaine, and ten pounds of marijuana. Tucker testified that she had accompanied Hernandez to collect money on various occasions. She also testified that sometime after she drove Hedgecock to deliver cocaine to a customer, Hernandez told Hedgecock that he needed to go collect payment from that customer and instructed him to take a gun. Tucker further testified that she had observed Hernandez getting a "white powdery substance" out of a safe for Hedgecock. Hedgecock testified that he

and Hernandez kept drugs and money in the safe, and that Hernandez kept larger quantities of drugs in the attic. Tucker testified that, upon Hernandez' instruction she had wired drug money from Hernandez to Jeremy in Denver.

Law enforcement officers stopped Tucker and Hernandez in Nebraska after they returned from Denver with a substantial quantity of methamphetamine they had obtained from Jeremy. Tucker testified that just prior to being stopped, they delivered methamphetamine to Dan Zeiger. Upon leaving Zeiger's residence, Hernandez put a trash bag and scale in the trunk of the car driven by Tucker, and he rode as a passenger. Hernandez told Tucker that they "needed to drive to Omaha . . . and see if [another person] wants the rest of this." When officers searched the vehicle, they found methamphetamine in the trunk.

The record generally suggests that Hernandez acted as an intermediary between those who were higher than him in the drug operation and those who were beneath him. A reasonable jury could have concluded that Hernandez was guilty of conspiring to distribute controlled substances beyond a reasonable doubt.

## II.    DENIAL OF BILL OF PARTICULARS

Hernandez next argues that the district court erred when it overruled his motion for a bill of particulars. Federal Rule of Criminal Procedure 7(f) states:

> The court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or within ten days after arraignment or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires.

A bill of particulars serves to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize

the danger of surprise at trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague and indefinite. United States v. Birmley, 529 F.2d 103, 108 (6th Cir. 1976). "To establish reversible error from the denial of a motion for a bill of particulars, a defendant must show that he was actually surprised at trial and suffered prejudice from the denial." United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir. 1993).

Here, the district court denied Hernandez' first motion for a bill of particulars because Hernandez had failed to comply with the terms of the court's progression order. However, upon Hernandez' counsel submitting to the government questions covering essentially the same information requested in the bill of particulars, the government provided counsel with detailed responses. In comparing the responses submitted to Hernandez' counsel with the record, we find that the responses provided counsel with information that precluded surprise, and that Hernandez fails to establish that he was actually prejudiced by the denial.

## III. ALLEGED GOVERNMENTAL SUPPRESSION OF FAVORABLE EVIDENCE

Next, Hernandez argues that the government suppressed evidence favorable to him in violation of Brady v. Maryland, 373 U.S. 83 (1963), and that the trial court erred when it determined no such violation had occurred. "To prove a Brady violation, a defendant must show that the prosecution suppressed the evidence, the evidence was favorable to the accused, and the evidence was material to the issue of guilt or punishment." United States v. Duke, 50 F.3d 571, 577 (8th Cir. 1995). Evidence is material if there is a reasonable probability that the outcome of the proceeding would have been different if the evidence had been disclosed. Kyles v. Whitley, 514 U.S. 419, 433-34 (1995). A "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceeding. Clemmons v. Delo, 124 F.3d 944, 949 (8th Cir. 1997).

Hernandez contends that after the car driven by Tucker and registered in her name was searched and drugs were located, Tucker advised the officer that Hernandez had an ownership interest in the car. He therefore argues that when the government opposed his motion to suppress based on Hernandez having no ownership interest in the car and, therefore, no standing to challenge the search, the government improperly withheld information as to the officer's knowledge of Hernandez' ownership interest. We need not parse this argument too deeply because Hernandez has shown no reasonable probability that the outcome of the motion to suppress hearing would have been different had the officer's knowledge been revealed. Tucker initially gave an officer consent to search the passenger compartment and, given that she was driving the vehicle and that it was registered in her name, the officer was justified in relying upon her consent. During that search, the officer arguably obtained probable cause to search the vehicle further when he located marijuana seeds and pieces of marijuana leaves in the passenger compartment. See United States v. Payne, 119 F.3d 637, 642 (8th Cir. 1997) ("Police may search a car without a warrant if they have probable cause to believe that the car contains contraband or evidence. In such circumstances, the police may search every part of the car and its contents that may conceal the object of the search."). Therefore, even if Hernandez had an ownership interest in the car, and even if the government should have revealed that interest to defense counsel when Hernandez failed to provide such information himself, thus giving him standing to challenge the search, Hernandez has failed to demonstrate a reasonable probability that the outcome of the motion to suppress hearing would have been different.

## IV.   EXPERT TESTIMONY REGARDING FINGERPRINT ANALYSIS

Hernandez also argues that the district court erred in allowing Robert Citta's expert testimony that a latent fingerprint found on a battery confiscated as evidence matched that of Hernandez. We review for abuse of discretion a court's decision to admit expert testimony. United States v. Larry Reed & Sons P'ship, 280 F.3d 1212, 1215 (8th Cir. 2002). Expert scientific testimony is generally admissible when it is

reliable and will assist the trier of fact. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-93 (1993); Larry Reed & Sons P'ship, 280 F.3d at 1215 (citing Federal Rule of Evidence 702). The Supreme Court has indicated that various factors bear on a trial court's decisions as to admissibility of such expert testimony. Daubert, 509 U.S. at 593-94. Those factors include, whether a theory or technique can be and has been tested, whether it has been subjected to peer review and publication, the known or potential rate of error and existence and maintenance of standards controlling the technique or theory's operation, and whether the technique or theory has been generally accepted within a relevant scientific community. Id.

Hernandez, citing United States v. Llera Plaza, Nos. CR. 98-362-10, CR. 98-362-11, 98-362-12, 2002 WL 27305, at *18 (E.D. Pa. Jan. 7, 2002), 179 F. Supp. 2d 492, vacated, withdrawn from publication, and superseded on reconsideration by 188 F. Supp. 2d 549 (E.D. Pa. 2002), contends that no evidence was presented that satisfied Daubert's peer review factor. In Llera Plaza, the district court initially determined that, because fingerprint identification does not satisfy Daubert, "expert witnesses [would] not be permitted to . . . present 'evaluation' testimony as to their 'opinion' (Rule 702) that a particular latent print is in fact the print of a particular person." 2002 WL 27305, at *18. However, the court shortly thereafter vacated that decision and chose another course. Llera Plaza, 188 F. Supp. 2d at 575-76. In its latter decision, the court concluded expert testimony regarding fingerprint evidence should, subject to sufficient trial court oversight, be regarded as satisfying Daubert and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

Moreover, given the posture of the testimony in this particular case and the overall record, the expert testimony was not determinative to the outcome. We therefore find the court did not abuse its discretion in admitting Citta's testimony.

## V.    MOTION FOR CONTINUANCE

Hernandez next argues that the trial court erred when it overruled his motion to continue.  He indicates that the government notified defense counsel four days before trial that it would be calling an expert witness to present testimony regarding the common practices used by dealers at various levels of drug distribution organizations. However, at trial, the government never actually called that individual to testify but failed to notify defense counsel of its decision until late into the trial.  We review a district court's denial of a motion for continuance  for abuse of discretion and  reverse only if the movant was prejudiced thereby.  United States v. Velasquez, 141 F.3d 1280, 1282 (8th Cir. 1998).  Although in the matter before us the witness was never actually called to testify, Hernandez contends that he was prejudiced by having to sacrifice defense counsel's valuable trial preparation time to prepare for that witness.  While we certainly appreciate the preciousness of time preceding trial and do not want to promote failures to observe courtesy, Hernandez fails to demonstrate actual prejudice. See id.  In other words, he has not shown what would have been done but for the false start, nor how such omission would have led to a different result.  Thus, we find that the court's denial of Hernandez' motion for continuance does not amount to an abuse of discretion.

## VI.    APPRENDI ISSUES

Hernandez next argues that the indictment failed to specify an exact quantity of methamphetamine and cocaine mixtures or any quantity of marijuana and therefore violates Apprendi v. New Jersey, 530 U.S. 466 (2000).  In Apprendi, the Court held that any fact, other than a prior conviction, that"increases the penalty for a crime beyond the prescribed statutory maximum" must be included in the indictment and proven to the jury beyond a reasonable doubt.  Id. at 490. However, the indictment need not allege an exact drug quantity but must merely set forth ranges of quantities relevant to the varying statutory maximums.  United States v. Hollingsworth, 257 F.3d

871, 878 (8th Cir. 2001), <u>overruled on other grounds by</u> <u>United States v. Diaz</u>, Nos. 00-2188, 00-2317, 2002WL 1477158, at *3 (8th Cir. July 11, 2002).

Here, the indictment charged Hernandez with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, 500 grams or more of a mixture or substance containing a detectable amount of cocaine, and an unspecified amount of marijuana. Because the indictment specified a drug quantity range set forth in 21 U.S.C. § 841(b) that allows a maximum sentence of life imprisonment, Hernandez was not sentenced in violation of <u>Apprendi</u>.

Hernandez goes on to argue that the indictment was defective because it failed to specifically cite 21 U.S.C. § 841(b). However,

> [a]n indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted.

<u>Fleming</u>, 8 F.3d at 1265 (citations omitted). Here, 21 U.S.C. § 841(b) is the penalty provision for offenses set forth in section 841(a), and, by cross-reference, section 846. As Hernandez acknowledges, the indictment alleges he violated 21 U.S.C. §§ 841(a)(1) and 846, and, as we previously discussed, the indictment referenced drug quantity ranges of methamphetamine and cocaine and some quantity of marijuana. Although the indictment did not specifically cite section 841(b), the pertinent drug quantities fulfilled the essential elements requirement necessary to satisfy <u>Fleming</u> and <u>Apprendi</u>.

-9-

Finally, Hernandez argues that, because the indictment did not specify an exact drug quantity, the maximum drug quantity he should have been held responsible for at sentencing was 500 grams, and that the district court improperly enhanced his sentence for possessing a dangerous weapon during the course of the conspiracy to distribute controlled substances and for his role as a manager in the conspiracy. However, "Apprendi does not forbid a district court from finding the existence of sentencing factors, including drug quantity, by a preponderance of the evidence; rather, it prevents courts from imposing sentences greater than the statutory maximum based on such findings." Diaz, 2002 WL 1477158, at *2. Because the indictment charged drug quantities that carried the potential of yielding a life sentence, and because the drug quantities and enhancements were supported by the record, Hernandez' sentence of thirty years' imprisonment did not violate Apprendi.

## VII. CONCLUSION

For the reasons we have stated, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-