# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2214

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Southern |
| v. | * | District of Iowa. |
| | * | |
| Regina Arceo, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted:  November 5, 2002

Filed:  November 12, 2002

_____

Before WOLLMAN, FAGG, and LOKEN, Circuit Judges.

_____

PER CURIAM.

A jury convicted Regina Arceo of conspiracy to distribute and possess with intent to distribute methamphetamine, and found Arceo was responsible for five hundred grams or more of mixtures and substances containing methamphetamine or more than fifty grams of methamphetamine. See 21 U.S.C. §§ 846, 841(a)(2) (2000). The district court[*] sentenced Arceo to imprisonment for 235 months.  Arceo appeals her conviction and sentence, and we affirm.

_____

[*]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

Arceo first challenges the sufficiency of the evidence. We review this issue de novo, examining the evidence in the light most favorable to the verdict and accepting as established all reasonable inferences supporting the verdict. United States v. Hernandez, 299 F.3d 984, 988 (8th Cir. 2002). We must uphold the jury verdict unless a reasonable jury could not have found all the offense's elements beyond a reasonable doubt. Id. To convict Arceo of conspiracy to distribute methamphetamine, the Government had to prove there was an agreement to distribute methamphetamine, Arceo knew of the conspiracy, and she intentionally joined the conspiracy. Id.

Evidence at trial showed undercover police officer Steve Gonzales was making controlled purchases of methamphetamine from Mark Sheese, and Sheese unwittingly introduced Gonzales to his drug associates, Arceo and Jennifer Regenos. At trial, Sheese testified that Arceo would obtain methamphetamine from her source, bring it to Regenos's residence, distribute half to Regenos and half to Sheese, and receive payment from them after they sold the drugs. Sheese testified that between thirty-six and forty pounds of methamphetamine were distributed in this way. Arceo made numerous statements on tape corroborating that she was the source of the methamphetamine, and admitting to the nature of her business relationship with Sheese and Regenos.

Arceo argues she did not knowingly become a part of the methamphetamine conspiracy engaged in by Regenos and Sheese. According to Arceo, she was Regenos's nanny, and merely acquainted with Sheese. Sheese's testimony and Arceo's statements on tape show the existence of a conspiracy and Arceo's knowing participation in it, however. We cannot review the jury's credibility assessment of Sheese's testimony. Id. at 989. We thus conclude the jury could reasonably find Arceo guilty beyond a reasonable doubt.

Arceo next asserts the district court should have declared a mistrial after the Government elicited coconspirator hearsay. We review this issue for abuse of discretion. United States v. McDougal, 137 F.3d 547, 556 (8th Cir. 1998). During direct examination of Officer Gonzales, Gonzales described Arceo's attempts to obtain methamphetamine for him after she could not get it from her usual source. Officer Gonzales stated Arceo met with Robbie Gomez in a parking lot, and Gonzales overheard Gomez say, "Just . . . tell them that I told you to go there, and if you have any problems, get a hold of me." Arceo then returned to Gonzales and told him she had a place they could go to obtain the drugs. Arceo also told Gonzales that Gomez owed her $900 for some methamphetamine she had fronted him, and she had told Gomez she would erase the debt if his contact could provide them with methamphetamine. Arceo objected to Gomez's statement, stating it wrongly implied Arceo had a criminal relationship with him and he was not named as a coconspirator. The Government asked the district court to admit the evidence not for the truth of the matter asserted, but to explain Arceo's actions in taking Gonzales to the last location where Arceo attempted to obtain drugs. The Government also asked the district court to give the jury a limiting instruction. Stating admissibility was a close question, the district court struck the testimony. The district court agreed with the Government that the evidence was isolated and not prejudicial in light of the substantial other evidence in the record. The district court declined to grant a mistrial, and gave Arceo the choice of either having a instruction read to the jury directing them to disregard the testimony or having the Government not refer to the matter in its closing argument. Arceo chose the latter option. Arceo now asserts the district court was required to give a jury instruction.

Gomez's statement was not hearsay and was admissible against Arceo if the Government proved by a preponderance of evidence that Gomez and Arceo were in a conspiracy and the statement was made during the course and in furtherance of the conspiracy. United States v. Bell, 573 F.2d 1040, 1043, 1044 (8th Cir. 1978). If the court decides the Government failed to show the statement was made by a

coconspirator during the course and in furtherance of a conspiracy, the court must declare a mistrial, unless a cautionary jury instruction to disregard the statement will cure any prejudice. Id.

Because Arceo declined the district court's offer to instruct the jury to disregard the statement, Arceo waived the issue. See Arkansas State Highway Comm'n v. Arkansas River Co., 271 F.3d 753, 760 (8th Cir. 2001); Starks v. Rent-A-Center, 58 F.3d 358, 361-62 (8th Cir. 1995). Besides, Gomez's statement was admissible because the Government presented sufficient evidence that Gomez was involved in the conspiracy. Gonzales testified Arceo told him Gomez owed her $900 for methamphetamine she had fronted him. Because the Government submitted evidence rendering the statement admissible, the district court's remedy did not prejudice Arceo. Also, the testimony about Gomez's statement was admissible to explain Arceo's later course of conduct, so the district court was not required to follow the Bell procedure. McDougal, 137 F.3d at 557. The district court properly declined to grant a mistrial or give the instruction refused by Arceo.

Arceo last contends the district court committed clear error in finding the conspiracy involved more than five kilograms (eleven pounds) of methamphetamine, resulting in a base offense level of 36 under U.S.S.G. § 2D1.1(c)(2). We disagree. Sheese testified Arceo was the source of more than thirty pounds of methamphetamine distributed by him and Regenos. The district court found Sheese's testimony credible and corroborated by Arceo's statements on tape, and found Arceo directly responsible for dealing in over five kilograms of methamphetamine. Thus, contrary to Arceo's assertion, the record is specific enough to support the drug quantity finding. Because Arceo personally supplied more than five kilograms of methamphetamine to the conspiracy, Arceo's argument that the amount was not reasonably foreseeable to her is without merit. The district court's drug quantity finding is not clearly erroneous. United States v. Torres, 258 F.3d 791, 794 (8th Cir. 2001).

We thus affirm Arceo's conviction and sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.