UNITED STATES of America,
Appellee,

v.

Rafael LOPEZ, also known as Tito,
Defendant–Appellant.

No. 02–1149.

United States Court of Appeals,
Second Circuit.

March 11, 2003.

Moira E. Casey, Douglaston, NY., for Defendant–Appellant.

Michael Beys, Assistant United States Attorney, United States Attorney's Office for the Eastern District of New York, Brooklyn, N.Y., for the United States.

Present: POOLER, B.D. PARKER, Circuit Judges, and HALL, District Judge.*

### SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 11th day of March, two thousand and three.

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

Rafael Lopez ("Defendant–Appellant") was convicted of various charges stemming from his participation in a narcotics conspiracy. On June 17, 1999, Victor Cruz, a police informant, introduced Defendant–Appellant to an undercover police officer, who purchased two-eighths of an ounce of cocaine base from Defendant–Appellant and his supplier. On June 29, 1999, the officer met Defendant–Appellant and two of his suppliers, Rickie Hammons and Jose Salcedo, to discuss a narcotics transaction. After the four men discussed the price and quantity of the narcotics, the officer purchased four-eighths of an ounce of cocaine base. Subsequently, the officer contacted Defendant–Appellant to arrange another transaction. On July 15, 1999, Defendant–Appellant and Jose Salcedo met the officer and sold him one ounce of cocaine base. On August 26, 1999, the officer contacted Defendant–Appellant to arrange a fourth narcotics transaction. Defendant–Appellant, along with Hammons and a third individual, met the officer at a gas station. After the officer gave Defendant–Appellant the money, Defendant–Appellant directed one of his colleagues to give the officer 14 grams of cocaine base. Finally, on September 8, 1999, Defendant–Appellant and another supplier, Miguel Alcala, met the officer to sell him 62 grams of cocaine base, and the two men were arrested.

Defendant–Appellant was charged with one count of conspiring to distribute and to possess with intent to distribute a substance containing cocaine base, in violation of 21 U.S.C. § 846, and five counts of possession with intent to distribute a sub-

* The Honorable Janet C. Hall, United States District Court Judge for the District of Connecticut, sitting by designation.

stance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1). On June 2, 2000, Defendant–Appellant pleaded guilty to the charges in the absence of a plea agreement. Prior to sentencing, Defendant–Appellant requested copies of the laboratory report analyzing the narcotics that he sold to the undercover officer. Upon discovering that the report, dated September 10, 1999, indicated only that the substance was "cocaine," Defendant–Appellant argued that he should be sentenced under the Sentencing Guidelines range for offenses involving cocaine rather than the range that applies to offenses involving cocaine base. However, the government had only tested the substance to determine its quantity and whether it was, in fact, some form of cocaine. The government offered to administer an additional test that would determine whether the substance contained cocaine base, and Defendant–Appellant stated that "[i]f this is an actual lab report, I wouldn't have any complaints." The test, conducted on December 5, 2000, revealed that the substance contained 92.1% of the properties of cocaine base. After holding an evidentiary hearing, at which two chemists testified, the district court found that the substance contained cocaine base, subjecting Defendant–Appellant to a ten-year mandatory minimum sentence. However, the district court granted Defendant–Appellant's request to withdraw his plea.

The government subsequently filed a superseding indictment charging Defendant–Appellant with: 1) one count of conspiring to distribute and to possess with intent to distribute a substance containing cocaine base, having previously been convicted of a felony drug offense, in violation of 21 U.S.C. § 846; 2) four counts of distributing and possessing with intent to distribute a substance containing cocaine base, having previously been convicted of a felony drug offense, in violation of 21 U.S.C.

§ 841(a)(1); and 3) one count of attempting to distribute and to possess with intent to distribute a substance containing cocaine base, having previously been convicted of a felony drug offense, in violation of 21 U.S.C. § 846. The jury acquitted Defendant–Appellant on one of the four counts of distributing and possessing with intent to distribute cocaine base, but convicted him on all remaining counts. At sentencing, the district court imposed a two-level enhancement after finding that Defendant–Appellant played a leadership role in the criminal enterprise. The district court also imposed a two-level enhancement for obstruction of justice because it found that Defendant–Appellant's testimony at trial was "preposterous." The district court sentenced Defendant–Appellant to five concurrent terms of 292 months imprisonment. Defendant–Appellant now appeals on the grounds that: 1) he received ineffective assistance of counsel; 2) the government violated his right to due process by filing the superseding indictment after he decided to withdraw his plea; and 3) the district court erred in imposing a two-level enhancement for his role in the offense and a two-level enhancement for obstruction of justice.

Defendant–Appellant first argues that he received ineffective assistance of counsel. In order to prevail, Defendant–Appellant must demonstrate that: 1) his counsel's performance fell below an objective standard of reasonableness; and 2) he suffered prejudice in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendant–Appellant cannot demonstrate that his counsel's conduct was unreasonable. Defendant–Appellant argues that his counsel "did not present arguments pretrial that could have lead [sic] to a lower guideline range after a plea...."

However, the record indicates that counsel urged the court to apply the Sentencing Guidelines range that applies to offenses involving cocaine. Although Defendant–Appellant argues that his counsel should have both objected to the additional test that confirmed the drugs were cocaine base and filed a motion to suppress the results of that test, Defendant–Appellant himself consented to the test, and he cites no authority that would have barred the government from testing the narcotics fifteen months after his arrest.[1] To the extent that Defendant–Appellant complains that his counsel did not attempt to discredit the officers and chemists who testified against him, "[a]ctions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance . . . ." *McKee v. United States*, 167 F.3d 103, 106 (2d Cir.1999) (internal quotation marks omitted).

■ Regardless, Defendant–Appellant cannot demonstrate that he was prejudiced by counsel's representation. The district court made clear that if Defendant–Appellant pleaded guilty, it would follow the Sentencing Guidelines range for offenses involving cocaine base, notwithstanding arguments advanced by counsel. As the district court intended to impose only the ten-year mandatory minimum sentence for such offenses, counsel could not have successfully argued for a lesser sentence if Defendant–Appellant pleaded guilty. Defendant–Appellant complains that his counsel did not argue that the subsequent laboratory test was inaccurate because "the properties of the controlled substance change over time." However, the district court firmly rejected this argument, and Defendant–Appellant identifies no evidence in support of his theory that counsel should have brought to the district court's

attention or presented as part of a defense at trial. While Defendant–Appellant maintains that counsel should have introduced the original laboratory report concluding that the narcotics were "cocaine," the report would not have benefitted Defendant–Appellant's position, as the government had tested the substance only to determine the family of drugs to which the samples belonged. Defendant–Appellant argues that he was prejudiced by the breakdown in communications with his attorney, pointing to his repeated requests for appointment of new counsel. However, the district court correctly noted that Defendant–Appellant's requests were based upon his counsel's inability to pursue a defense that was unsupported by the evidence. Although Defendant–Appellant maintains that counsel told him that he would only be sentenced under the Sentencing Guidelines range applicable to cocaine if he pleaded guilty, he was not prejudiced because the district court allowed him to withdraw that plea. Finally, Defendant–Appellant complains that his counsel prejudiced him by not assisting his efforts to file and argue his *pro se* motion to dismiss the indictment. However, the district court made clear that it would not have granted the motion, and there was sufficient evidence that Defendant–Appellant sold cocaine base to justify the indictment. In sum, Defendant–Appellant cannot demonstrate that his counsel's representation was ineffective.

■ In the alternative, Defendant–Appellant argues that the government violated his due process rights by filing a superseding indictment, which charged more serious offenses than the first indictment, after he withdrew his plea. At the outset, Defendant–Appellant waived this claim by failing to raise it before trial. *See* Fed.

1. While Defendant–Appellant argues that he objected to the test, he did so only after he learned of the results.

**854**

R.Crim.P. 12(b)(1) (2001). Regardless, the claim is without merit. There is no presumption of prosecutorial vindictiveness when a prosecutor seeks a superseding indictment in a pre-trial setting, *United States v. Hinton,* 703 F.2d 672, 678–79 (2d Cir.1983) (citations omitted), and Defendant–Appellant identifies no "objective evidence [of] an improper prosecutorial motive." *See United States v. Goodwin,* 457 U.S. 368, 380 n. 12, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).

■ Finally, Defendant–Appellant argues that the district court erred in assessing a two-level enhancement for his role in the offense and a two-level enhancement for obstruction of justice. "Disputed facts with regard to sentencing need only be proven by a preponderance of the evidence." *United States v. Ashley,* 141 F.3d 63, 69 (2d Cir.1998) (citation omitted). This Court must uphold the district court's findings of fact unless they are clearly erroneous, *id.,* and a sentencing judge who presided over the trial may rely on evidence from the trial, *United States v. Jimenez–Villasenor,* 270 F.3d 554, 562–63 (8th Cir.2001). The evidence in this case supports the district court's conclusion that Defendant–Appellant played a leadership role in the offense, as Defendant–Appellant negotiated the narcotics transactions and gave instructions to other participants in the conspiracy, *viz.,* his suppliers.

■ The evidence also supports the imposition of a two-level enhancement for obstruction of justice based upon Defendant–Appellant's perjury. In order to base an enhancement upon the giving of perjured testimony, the district court must find that the defendant willfully and materially committed perjury, which is the intentional giving of false testimony as to a material matter. *United States v. Zagari,* 111 F.3d 307, 329 (2d Cir.1997). The district court clearly found that Defendant–Appellant's testimony at trial was "prepos-

terous," and while the district court should have made "separate and clear findings on each element of perjury," the court's finding "tracks those factual predicates necessary to support a finding of perjury...." *United States v. Shonubi,* 998 F.2d 84, 88 (2d Cir.1993) (citations omitted). Moreover, the district court's finding is amply supported by the evidence. Defendant–Appellant testified that he was entrapped by the undercover police officer, but the evidence indicates that Defendant–Appellant was a willing participant in the narcotics transactions. Defendant–Appellant also admitted that he sold crack cocaine, rather than powder cocaine, during at least some of the transactions at issue. Accordingly, the district court did not err in imposing the two sentencing enhancements.

Based upon the foregoing, the judgment of the United States District Court for the Eastern District of New York is AFFIRMED.