# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3056

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| James Michael Wilbourn, | * | |
| | * | [UNPUBLISHED] |
| Defendant-Appellant. | * | |

_____

Submitted: March 16, 2012
Filed: June 1, 2012

_____

Before MURPHY, BRIGHT, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

A jury convicted James Michael Wilbourn of conspiracy to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court[1] sentenced Wilbourn to 41 months (3 years and 5 months) in prison. Wilbourn moved for a judgment of acquittal and for a new trial, both of which the district court denied. The district court determined, however, that the conspiracy involved a lower quantity of drugs than found by the jury, and imposed a guideline sentence based on this lower drug quantity. Wilbourn appeals the district court's denial of his motion

_____

[1]The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota.

for acquittal, motion for a new trial, and contends the court's determination of the lower drug quantity was excessive. We reject these contentions and affirm.

At trial, several witnesses and officers testified to the events surrounding the alleged conspiracy. Andre Gilbert, a co-conspirator who pled guilty, testified he met Wilbourn during the summer of 2008, but did not begin selling crack cocaine directly to Wilbourn until December 2008. When they met, Gilbert was selling crack cocaine out of Delacey Williams's house by providing it to Williams, who in turn provided the crack cocaine to others, including Wilbourn. On two occasions in July 2009, Gilbert fronted Wilbourn $200 to $300 worth of crack cocaine in exchange for Wilbourn's car keys because Wilbourn had insufficient cash.

One witness testified that along with getting his crack cocaine, Wilbourn acted as the doorman, directed buyers to the place of pickup, and kept an eye out for the police. According to this witness, Wilbourn was likely being paid in drugs in exchange for his services. Another witness testified that Wilbourn and Gilbert did favors for each other involving drugs. The witness once saw Wilbourn get a package, go outside, and return with money. The witness recalled an occasion when Gilbert got into an argument with a buyer and when the argument got heated, Wilbourn stepped in and struck the buyer with his fist, ending the argument.

Detective Thomas Schmitz testified that he set up a controlled buy with a confidential informant on July 20, 2009. At Schmitz's direction, the informant was to purchase $100 worth of crack. Schmitz testified that a $100 rock of crack cocaine usually weighs between half a gram and a gram.

The informant testified that on July 20, 2009, she went to a home, known as one of Gilbert's places of distribution. There, she encountered Gilbert and Wilbourn. Wilbourn sold the informant $100 worth of crack cocaine. An undercover microphone recorded their conversation and revealed the following statements from Wilbourn: "I really know what the f*** I'm talking about, you know what I'm

saying?  I gave this mother f*** some dope and some money.  Says I'll have your money when I get back.  Bitch ain't got my money.  Don't make me take your shit."  Brad Johnson, a forensic specialist for the Sioux Falls police department, testified that the crack cocaine obtained during the controlled buy yielded 0.87 grams of cocaine.

The district court denied Wilbourn's motion for a judgment of acquittal and for a new trial.  However, it determined that Wilbourn's conduct involved a lower quantity of drug than the quantity found by the jury, and ordered that the presentence report (PSR) be updated to reflect a lower quantity of 4.87 grams—0.87 grams from the controlled buy and 4 grams which Gilbert fronted Wilbourn.

Wilbourn raises three principal issues on appeal.  On the merits, Wilbourn attacks the sufficiency of the evidence and asserts the trial court erred in failing to grant a judgment of acquittal or to grant a new trial.  Wilbourn further asserts that the trial evidence supports only a drug quantity of 0.87 grams.

A.

On Wilbourn's motion for judgment of acquittal, "[t]his court reviews the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government, with all reasonable inferences and credibility determinations made in support of the jury's verdict." *United States v. Kelly*, 436 F.3d 992, 996 (8th Cir. 2006).  A verdict will be overturned "only if no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt" *United States v. Gray*, 369 F.3d 1024, 1028 (8th Cir. 2004).  To prove a defendant was involved in a conspiracy to distribute crack cocaine, the government must show (1) there was a conspiracy to distribute crack cocaine, (2) the defendant knew of the conspiracy, and (3) he intentionally joined the conspiracy.  *United States v. Jiminez*, 487 F.3d 1140, 1146 (8th Cir. 2007) (citation omitted).

Trial testimony sufficiently shows a conspiracy existed. One could infer from Gilbert's testimony that an agreement existed between Gilbert and Williams to distribute crack cocaine whereby Williams provided a location for the sales and Gilbert provided the crack cocaine. *See United States v. Delgado*, 653 F.3d 729, 737 (8th Cir. 2011) (an agreement may be shown wholly by circumstantial evidence or by inference from the parties' actions). Gilbert first used Williams's home as a distribution center, but over time expanded to other locations.

Wilbourn's knowledge of the conspiracy can be inferred by his statements during the controlled drug buy where he expressly discussed providing drugs to someone to sell. *See United States v. Turner*, 583 F.3d 1062, 1067 (8th Cir. 2009) (absent direct proof of a conspiracy, jury is free to consider defendant's statements and actions, and may draw reasonable inferences about defendant's state of mind).

Finally, trial testimony allowed the jury to conclude that Wilbourn voluntarily and intentionally joined the conspiracy. Wilbourn served as a middleman between Gilbert and other drug buyers, thereby facilitating the crack cocaine distribution. Wilbourn obtained crack cocaine from either Gilbert or someone Gilbert had supplied and, in turn, provided, or appeared to provide, the crack cocaine to a third party. Gilbert fronted drugs for Wilbourn on at least two occasions. As the doorman, Wilbourn let in buyers, directed them through the homes and remained on the lookout for the police. *See United States v. Alexander*, 408 F.3d 1003, 1008-09 (8th Cir. 2005) (defendant's activities as lookout for a methamphetamine distributor was evidence of participation in conspiracy). Wilbourn even intervened to end a buyer's argument with Gilbert by assaulting the buyer. Collectively, Wilbourn's conduct could be inferred as that of membership in a drug distribution conspiracy. *See United States v. Van Nguyen*, 602 F.3d 886, 899 (8th Cir. 2010) (the jury is permitted to use common sense to infer that defendant knew what she was doing).

-4-

B.

Wilbourn's motion for a new trial asserted insufficient evidence to support the conviction as well as the sentence. The evidence supported the conviction. Trial testimony shows Wilbourn was a member of the conspiracy to distribute crack cocaine as early as December 2008. He knowingly and intentionally joined in the conspiracy when he brokered deals for Gilbert and purchased crack cocaine directly from Gilbert. By answering the door, directing buyers to the place of pick up, and being on the lookout for police, Wilbourn was involved in and helped further the conspiracy.

The evidence also supported the reduced drug quantity of 4.87 grams of crack as a basis for the court's imposition of a sentence of 41 months. Thus, the district court did not err in denying a new trial.

C.

This court reviews drug quantity findings for clear error, as they are factual. *United States v. Hull*, 646 F.3d 583, 587 (8th Cir. 2011). The trial court must find the drug amount by a preponderance of the evidence standard. *United States v. Webb*, 545 F.3d 673, 677 (8th Cir. 2008). To do so, the court may look beyond trial testimony. *See United States v. Hill*, 638 F.3d 589, 593 (8th Cir. 2011) ("The Sentencing Guidelines permit district courts to approximate drug quantities . . . to establish[ ] the relevant amount, and there is sufficient indicia of reliability to support its probable accuracy.") (quotations and citations omitted). The amount of drugs attributable to a defendant in a conspiracy includes drugs purchased for personal use. *United States v. Jimenez-Villasenor*, 270 F.3d 554, 562 (8th Cir. 2001).

Wilbourn contends the drug quantity should have been 0.87 grams, the amount sold during the controlled buy, instead of 4.87 grams. He argues the remaining 4 grams are based on Gilbert's unsworn statement before trial and therefore unreliable.

Wilbourn also argues the 4 grams were purchased from Gilbert before the existence of a conspiracy, and therefore cannot be a part of the total drug quantity.

The revised PSR states that the informant received 0.87 grams of crack cocaine from Wilbourn. Gilbert's trial testimony indicates he fronted $200 to $300 worth of crack cocaine to Wilbourn on two separate occasions in July 2009. At $100 per gram, this amounted to 4 grams. Trial evidence reflects that a conspiracy existed in late 2008 and Wilbourn joined the conspiracy as early as December 2008 when he brokered deals for Gilbert. Thus, the district court did not clearly err in relying on this testimony to conclude that 4.87 grams is the appropriate drug amount for sentencing.

Accordingly, we affirm the conviction and sentence.

_____